

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

April 18, 2008

Clerk, United States District Court
Northern District of California
Phillip Burton U. S. Courthouse, 16th Floor
450 Golden Gate Avenue
San Francisco, CA 94102-3434



Re:   Transfer of our Civil Case No.  CV 07-03902 CAS (FMOx)

Case Title:  Manfred Hacker, etc. v. Yahoo!, Inc., et al.

Dear Sir/Madam:

An order having been made transferring the above-numbered case to your district, we are transmitting herewith our entire original file in the action, together with certified copies of the order and the docket. Please acknowledge receipt of same and indicate below the case number you have assigned to this matter on the enclosed copy of this letter and return it to our office. Thank you for your cooperation.

\*\*\* Please use your Court's PACER account and
password to access all efiling documents
to our website:  http://ecf.cacd.uscourts.gov.

Thank you.

Very truly yours,

Clerk, U.S. District Court

By _____
G. Kami          (213) 894-0747

Deputy Clerk

cc:   All counsel of record

=======================================================================================

**TO BE COMPLETED BY RECEIVING DISTRICT**

Receipt is acknowledged of the documents described herein and we have assigned this matter case number CV: _____ **CV 08** **2115** **JSW**

E-filing

Clerk, U.S. District Court

By _____
HELEN L. ALMACEN
Deputy Clerk

CV-22 (01/01)          **TRANSMITTAL LETTER - CIVIL CASE TRANSFER OUT**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Deputy

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

0101    **CIVIL MINUTES - GENERAL**    JS-6

| Case No. | CV 07-3125 CAS (FMOx) c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Anne Box Spencer Burkholz | | Judson Lobdell Jordon Eth |

**Proceedings:**    DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 USC § 1404(a) (filed 02/12/08)

## I.    INTRODUCTION

On August 20, 2007, the Court consolidated two related class actions against defendants Yahoo!, Inc. ("Yahoo!"), Terry S. Semel ("Semel"), and Susan L. Decker ("Decker") and appointed the Pension Trust Fund for Operating Engineers ("Operating Engineers") and the Pompano Beach Policy & Firefighters' Retirement System ("Pompano Beach") (collectively, "the Pension Funds") as lead plaintiffs.[1]    Docket 19.

On December 21, 2007, plaintiffs filed a consolidated amended complaint ("CAC") on behalf of all persons who purchased or otherwise acquired Yahoo! common stock between April 8, 2004 and July 18, 2006 ("the Class Period") against Yahoo!, Semel, Decker, Daniel L. Rosensweig ("Rosensweig"), and Farzad Nazem ("Nazem").[2]

---

[1] These two actions were Case No. CV 07-3125 CAS (FMOx), filed by Ellen Rosenthal Brodsky on May 11, 2007, and Case No. CV 07-3902 CAS (FMOx), filed by Manfred Hacker on June 15, 2007.

[2] The CAC alleges that the four individual defendants were Yahoo!'s "top four officers" during the Class Period. CAC ¶ 1. According to the CAC, Semel was chairman of the board and chief executive officer, Rosensweig was chief operating officer, Nazem was executive vice president and chief technology officer, and Decker was executive vice president of finance and administration and chief financial officer. Id. at ¶¶ 15-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                      **JS-6**

| Case No. | CV 07-3125 CAS (FMOx) c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|------------------------------------------------|------|----------------|

| Title | IN RE: YAHOO! INC. |
|-------|---------------------|

CAC ¶ 1. Plaintiffs allege that defendants made false and misleading statements regarding Yahoo!'s business model, financial results, continued sales, and earnings growth. Specifically, plaintiffs allege that defendants made misrepresentations regarding the acquisition and integration of Overture Services, Inc. ("Overture"), a company based in Pasadena, California, and the development and implementation of a new Internet search engine ("Project Panama"). Id. at ¶¶ 157-74. Plaintiffs further allege that defendants overstated Yahoo!'s revenues and growth rate by improperly recognizing revenue derived from "click fraud" in which Yahoo!'s Internet advertising customers allegedly made improper payments to Yahoo!. Id. at ¶¶ 175-78, 199-210. Additionally, plaintiffs allege that defendants, in order to manipulate Yahoo!'s quarterly revenues, altered Yahoo!'s click fraud detection system in order to pass along to advertising customers additional click fraud related charges. See, e.g., id. at ¶ 56(f). Plaintiffs allege that they relied on defendants' false and misleading statements in deciding to purchase Yahoo! stock during the Class Period and suffered economic losses when Yahoo!'s stock declined. Plaintiffs allege violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78t(a) ("the 1934 Act"), and Rule 10b-5 promulgated thereunder.

On February 12, 2008, defendants filed the instant motion to transfer this case to the United States District Court for the Northern District of California. On February 25, 2008, plaintiffs filed an opposition thereto. Defendants filed a reply on March 3, 2008.

On March 5, 2008, plaintiffs filed an *ex parte* application for leave to file a response to defendants' reply brief pursuant to Local Rule 7-10. Defendants filed an opposition thereto on March 6, 2008. Having reviewed the respective arguments of the parties in regard to plaintiffs' *ex parte* application, the Court GRANTS this application. Plaintiffs surreply, which was attached as exhibit one to plaintiffs' *ex parte* application, is deemed filed with the Court on March 6, 2008.

A hearing was held on March 10, 2008. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   **LEGAL STANDARD**

In deciding a motion to transfer, the Court must consider the following three

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES - GENERAL** | | **JS-6** |
|---|---|---|
| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
| Title | IN RE: YAHOO! INC. | | |

factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); see Los Angeles Mem'l Coliseum Comm'n v. NFL, 89 F.R.D. 497, 499 (C.D. Cal. 1981).

In analyzing the "interests of justice," a number of factors are relevant, including the following: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Other factors that can be considered are: the enforceability of the judgment; the relative court congestion in the two forums; and which forum would better serve judicial economy. 17 MOORE'S FEDERAL PRACTICE § 111.13[1][c] (3d ed. 1997).

Generally, "[s]ubstantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors set forth above weigh heavily in favor of venue elsewhere." Catch Curve, Inc. v. Venali, Inc., 2006 U.S. Dist. LEXIS 96379, *3-4 (C.D. Cal. 2006).

The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 278-279 (9th Cir. 1979); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). The decision to transfer lies within the sound discretion of the trial judge. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988).

## III. DISCUSSION

### A. Convenience of the Parties

Defendants contend that it is more convenient for them to litigate this case in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. | | |

Northern District of California because Yahoo!'s headquarters, in Sunnyvale, California, is located there and that is where Decker, Rosensweig, and Nazem reside. Declaration of Ceming Chao ("Chao Decl.") ¶¶ 2, 4(c), 4(j), 4(l). Defendants argue that Semel is the only defendant who lives in the Central District. Id. at ¶ 4(m). Additionally, defendants argue that one of the two lead plaintiffs, Operating Engineers, is administered in the Northern District, and therefore, this plaintiff would not be inconvenienced were the action to be transferred there. Declaration of Jordan Eth ("Eth Decl.") Ex. 13, at ¶ 7 (complaint filed by Operating Engineers and other parties in the Northern District of California alleging that Operating Engineers is administered in the Northern District).

Plaintiffs respond that compelling the individual defendants to litigate in this judicial district would only minimally inconvenience them because plaintiffs would agree to depose Decker, Rosensweig, and Nazem in the Northern District. Plaintiffs further argue that Yahoo! maintains offices in the Central District of California, and therefore, it would not be burdensome to compel Yahoo! to litigate in this forum.

While plaintiffs correctly note that transfer must not "merely shift rather than eliminate the inconvenience" to the parties, Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986), plaintiffs have set forth no reasons why they would be inconvenienced if this action were transferred to the Northern District. Plaintiffs do not claim that any of them reside in this district or that this district is for some other reason especially convenient for them. Plaintiffs do not dispute defendants' contention that one of the two lead plaintiffs is administered in the Northern District. Moreover, the putative class, which plaintiffs define as all persons who purchased Yahoo! common stock within the Class Period, presumably consists of persons residing throughout the United States. Additionally, plaintiffs do not dispute that three of the four individual defendants reside in the Northern District of California and that Yahoo! is headquartered there. Therefore, the convenience of the parties factor weighs in favor of transfer.

The Court is also persuaded by defendants' contention that the location of the defendants is a weighty consideration in deciding whether this securities class action is properly transferred because plaintiffs' allegations focus on defendants' conduct and do not appear to implicate involved questions of fact regarding plaintiffs' behavior. See In re Hanger Orthopedic Group, Inc., 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) ("because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. |
|---|---|

'trials in securities class actions focus almost entirely on the defendants' conduct,'
defendants' presence at trial is crucial, while 'matters within any particular plaintiff's
individual knowledge would not be particularly relevant to the claims and likely
defenses.") (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 402
(S.D.N.Y. 1998)).

## B.    Convenience of the Witnesses

The convenience of the witnesses is usually the most important factor to consider
in deciding whether to transfer an action. Ironworkers Local Union No. 68 &
Participating Employers Health and Welfare Fund v. Amgen, Inc., 2008 U.S. Dist.
LEXIS 8740, at *14 (C.D. Cal. 2008). "'Convenience of witnesses' includes both non-
party witnesses outside the scope of the Court's subpoena power and the geographic
location of any witnesses likely to testify in this case." Costco Wholesale Corp. v.
Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). However, it is often
the convenience of the non-party witnesses that figures most prominently in this analysis.
Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau, 2007 U.S. Dist.
LEXIS 31762, *9 (N.D. Cal. 2007); Saleh v. Titan Corp, 361 F. Supp. 2d 1152, 1161
(S.D. Cal. 2005). A court must consider "not simply how many witnesses each side has
and the location of each, but also the importance of the witnesses." Costco Wholesale
Corp., 472 F. Supp. 2d at 1193 (quoting Saleh, 361 F. Supp. 2d at 1157).

Defendants maintain that the majority of the potential witnesses work at Yahoo!'s
headquarters in Silicon Valley or reside in the vicinity. Defendants aver that Yahoo!'s
"management team" was responsible for the subject matter raised by the allegations in the
CAC. According to defendants, eight non-defendant members of the management team
reside in the Northern District and are presently employed by Yahoo!. Chao Decl. ¶¶
4(b), 4(d), 4(g), 4(h), 4(i), 4(k), 4(n), 4(o). Defendants also aver that Yahoo!'s staff
responsible for accounting, financial analysis, financial reporting, and investor
communications work in Yahoo!'s Silicon Valley headquarters. Declaration of Aman
Kothari ("Kothari Decl.") ¶¶ 3-8.

Defendants further assert that of the three non-defendant members of the
management team who are no longer employed by Yahoo!, one resides in the Central

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                            **JS-6**

| Case No. | CV 07-3125 CAS (FMOx) c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. | | |

District and two reside in the Northern District. Chao Decl. ¶¶ 4(a), 4(e), 4(f).[3] Additionally, defendants assert that Yahoo!'s independent auditors during the Class Period are based in the San Jose office of PricewaterhouseCoopers, in the Northern District. Kothari Decl. ¶ 15.

Plaintiffs respond that the allegations in the CAC are based on information provided by fifteen confidential witnesses, thirteen of whom worked in the Central District either for Yahoo! or Overture -- a Yahoo! subsidiary -- during the Class period. Declaration of Spencer Burkholz ("Burkholz Decl.") ¶ 4. The CAC alleges that these fifteen confidential witnesses include former Yahoo! employees and customers. CAC ¶¶ 19-34. Plaintiffs assert that nine of these fifteen individuals presently reside in the Central District. Burkholz Decl. ¶ 5. Plaintiffs also state that they have identified eleven former Overture or Yahoo! employees who have knowledge of facts relevant to this action and who reside in the Central District. Id. ¶ 6.

Because plaintiffs do not identify the eleven former Overture or Yahoo! employees who, according to plaintiffs, may offer relevant testimony, or specify how their testimony might be relevant to the issues raised in this action, plaintiffs' assertion that these witnesses reside in the Central District is of no consequence. See Salah, 361 F. Supp. 2d at 1164 (declining to consider the convenience of potential witnesses proffered by the plaintiffs where the plaintiffs did not identify these individuals or specify how they might provide important testimony). Moreover, while plaintiffs assert that nine of the fifteen confidential witnesses live in the Central District, plaintiffs do not state how many of these nine witnesses are presently employed by Yahoo! or Overture. Thus, to the extent that plaintiffs' confidential witnesses are current employees of Yahoo! or its subsidiary Overture, their convenience is a less weighty consideration because they are party witnesses. Id. at 1163-64 (noting that the convenience of witnesses employed by the defendants was a less weighty consideration in the transfer analysis, even where these witnesses were proffered by the plaintiffs).

---

[3] Defendants have set forth the names and capacities of the members of the management team, including those who are presently employed by Yahoo! and those who are no longer so employed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. |
|---|---|

Furthermore, although the CAC sets forth allegations bearing on the potential testimony of each of plaintiffs' confidential witnesses, plaintiffs do not state where each of these witnesses is presently located in a manner that would enable the Court to evaluate the importance of the potential testimony of each of plaintiffs' nine purportedly local confidential witnesses. Plaintiffs simply state that nine of its fifteen confidential witnesses reside in the Central District, but do not state what information possessed by these nine individuals would be pertinent to the issues raised in this case.

In any event, defendants have identified numerous other party and non-party witnesses for whom the litigation of this action in the Northern District would be more convenient. See Chao Decl. ¶ 4; Kothari Decl. ¶ 15. Defendants persuasively argue that these witnesses, including individuals no longer employed by Yahoo! who were formerly on Yahoo!'s management team and Yahoo!'s third-party auditors, are likely to provide important testimony in this securities class action, in which it appears from plaintiffs' allegations that the state of mind and the actions of Yahoo!'s senior officers regarding Yahoo!'s policies, management, decision-making, and accounting practices will be prominent issues. In considering the witnesses and the evidence proffered by both sides, the Court finds and concludes that defendants have made the stronger showing and that the convenience of the witnesses factor weighs in favor of transfer.

## C.    Interests of Justice

### 1.    Plaintiffs' Choice of Forum

The parties argue at length regarding the weight to be accorded the plaintiffs' choice of forum. As plaintiffs' point out, where relevant factors do not strongly favor transfer, "the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). However, the Ninth Circuit has held that "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); accord Forrand v. Fed. Express Corp., 2008 U.S. Dist. LEXIS 10858, at *7 (N.D. Cal. 2008); Ironworkers Local Union No. 68 & Participating Employers Health and Welfare Fund v. Amgen, Inc., 2008 U.S. Dist. LEXIS 8740, at *11 (C.D. Cal. 2008); Flores v. Zale Del., Inc., 2007 U.S. Dist. LEXIS 95095, at *6 (N.D. Cal. 2007); Ray v. BlueHippo Funding, LLC, 2007 U.S. Dist. LEXIS 91060, at *7 (N.D. Cal. 2007); Gerin v. Aegon USA, Inc.,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                    JS-6

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|---------------------------------------------------|------|----------------|

| Title | IN RE: YAHOO! INC. |
|-------|--------------------|

2007 U.S. Dist. LEXIS 28049, at *20 (N.D. Cal. 2007).

Plaintiffs note that <u>Lou</u> also stated that relevant considerations in determining how much weight to place on the plaintiffs choice of forum include whether the operative facts occurred within the forum and whether the forum has an interest in the parties or the subject matter of the litigation. <u>Lou</u>, 834 F.2d at 739. Plaintiffs contend that their choice of forum should control because their claims relating to Overture and Project Panama involve facts that occurred in the Central District and Yahoo! and Overture employees who worked in the Central District. However, while some of the relevant facts appear to have occurred in this forum, many other relevant facts relating to plaintiffs claims undisputably occurred in the Northern District, where Yahoo! is headquartered. It cannot be said that the Central District has a greater connection to the parties or the subject matter of this case than does the Northern District, especially where defendants are mostly based in the Northern District and no named plaintiffs appear to reside in the Central District.

Because plaintiffs do not reside in this forum and because this case is a class action, the usual reasons for deferring to a plaintiff's choice of forum do not apply. <u>See Koster v. (Am.) Lumbermens Mut. Casualty Co.</u>, 330 U.S. 518, 524 (1947) ( "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."); <u>Baird v. California Faculty Ass'n</u>, 2000 U.S. Dist. LEXIS 6145, at *4 (N.D. Cal. 2000) (eschewing "mechanistic adherence" to the traditional rule giving the plaintiff's choice of forum substantial deference "in a class action in which plaintiffs are dispersed throughout the state."); <u>Shulof v. Westinghouse Elec. Corp.</u>, 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975) ("While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions . . ."); <u>see also Williams v. Bowman</u>, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (noting that the degree to which courts defer to the plaintiff's choice of forum is "substantially reduced" where the plaintiff is a nonresident); <u>accord Forrand v. Fed. Express Corp.</u>, 2008 U.S. Dist. LEXIS 10858, at *7 (N.D. Cal. 2008). Moreover, this action appears to have at least as many connections to the Northern District as it does to the Central District. Furthermore, plaintiffs' choice of the Central District is far less compelling because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|-----------------------------------|------|----------------|

| Title | IN RE: YAHOO! INC. |
|-------|---------------------|

Northern District is also in the Ninth Circuit. Under these circumstances, there is no
reason to accord plaintiffs' choice of forum special deference.

Plaintiffs further argue that because this action is a securities action, it is subject to
the special venue provision of 15 U.S.C. § 78aa which, according to plaintiffs, requires a
court to defer to a plaintiff's choice of forum.[4] In this regard, plaintiffs rely on Sec.
Investor Protection Corp. v. Vigman, 764 F.2d 1309 (9th Cir. 1985), in which the Ninth
Circuit stated, "the intent of the venue and jurisdictional provisions of the securities laws
is to grant potential plaintiffs liberal choice in their selection of a forum, and unless the
balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum
should rarely be disturbed." Id. at 1317 (quoting Ritter v. Zuspan, 451 F. Supp. 926, 928
(E.D. Mich. 1978)).

There is authority for plaintiffs' contention that the fact that this case arises under
the 1934 Act counsels in favor of granting plaintiffs' choice of venue additional
deference. See SEC v. Rose Fund, LLC, 2004 U.S. Dist. LEXIS 22491, at *4-5 (N.D.
Cal. 2004) (in an civil enforcement action brought by the SEC, stating that the general
rule affording the plaintiff's choice of forum is afforded substantial weight "applies even
more so here where Congress has enacted a special venue provision for actions under the

---

[4] Section 78aa provides, in pertinent part, that

> [a]ny criminal proceeding may be brought in the district
> wherein any act or transaction constituting the violation
> occurred. Any suit or action to enforce any liability or duty
> created by [the 1934 Act] or rules and regulations thereunder,
> or to enjoin any violation of [the 1934 Act] or rules and
> regulations, may be brought in any such district or in the district
> wherein the defendant is found or is an inhabitant or transacts
> business, and process in such cases may be served in any other
> district of which the defendant is an inhabitant or wherever the
> defendant may be found.

15 U.S.C. § 78aa.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
| --- | --- | --- | --- |

| Title | IN RE: YAHOO! INC. |
| --- | --- |

federal securities laws."); Stanley Works v. Kain, 833 F. Supp. 134, 137 (D. Conn. 1993) ("The breadth of . . . [§78aa] arguably strengthens [the presumption favoring the plaintiff's choice of forum] in securities actions. 'The venue provision of the 1934 Act represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue.'") (quoting SEC v. Elecs. Warehouse, Inc., 689 F. Supp. 53, 74 (D. Conn. 1988)); Lemberger v. Westinghouse Elec. Corp., 1976 U.S. Dist. LEXIS 12506, at *13-*14 (E.D.N.Y. 1976) ("The weight attached to a plaintiff's choice of forum is particularly great where, as here, the applicable venue provision is designed to serve a national policy underlying the Securities Exchange Act: the policy of allowing a plaintiff the widest possible number of choices of a district in which to sue. If transfers were granted in securities cases with too much abandon, the effect would be to undermine Congressional efforts to enforce securities laws by minimizing burdens on plaintiffs in civil suits."); see also Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 537-38 (N.D. Cal. 2005) (finding that the plaintiff's choice of forum was entitled to greater deference in light of Title VII's special venue provision); accord Berry v. Potter, 2006 U.S. Dist. LEXIS 6756, at *11-12 (D. Ariz. 2006).

However, the special venue provision of § 78aa and the above-quoted language from Vigman do not change the foregoing analysis regarding the deference to which plaintiffs' choice of forum is entitled. Nothing in § 78aa prevents the Court from determining whether this action should be transferred under § 1404(a). Section 1404(a) applies to "any civil action," including actions governed by special venue provisions. Ex parte Collett, 337 U.S. 55, 58-59 (1949); Commodity Futures Trading Com. v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). Thus, while under § 78aa, plaintiffs are free to lay venue in the forum of their choice, that choice of forum must be measured by the standards of § 1404(a). In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, (S.D.N.Y. 1998) (stating that the securities acts' special venue provisions "do not prohibit, by their own terms, a court from entertaining a motion to transfer under § 1404(a) or from transferring an action to a more convenient forum. They also do not alter the standard employed in deciding whether transfer is appropriate.") (citation omitted); Blumental v. Management Assistance, Inc., 480 F. Supp. 470, 472 (N.D. Ill. 1979).

None of the cases relied upon by plaintiffs, including Vigman, holds that in a securities class action, the usual deference to the plaintiff's choice of forum applies by virtue of the securities acts' special venue provisions. The majority of decisions that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|--------------------------------------------------|------|----------------|

| Title | IN RE: YAHOO! INC. |
|-------|--------------------|

have considered the securities acts' special venue provisions against the line of cases
rejecting deference to the plaintiff's choice of forum in class and derivative actions hold
that, where the class plaintiffs are not residents of the chosen forum, their chosen forum
deserves no special treatment. See In re Amkor Tech., Inc. Sec. Litig., 2006 U.S. Dist.
LEXIS 93931, at *11-*12 (E.D. Pa. 2006) (holding that the co-lead plaintiffs' choice of
forum should not receive great deference where they were non-residents and they alleged
a large number of unknown plaintiffs potentially located nationwide); Collier v. Stuart-
James Co., 1990 U.S. Dist. LEXIS 4896, at *9-*10 (S.D.N.Y. 1990) (rejecting the
plaintiffs' reliance on the securities acts' venue provisions and stating, "plaintiffs' choice
of forum in a class action is given little weight 'because in such a case, there will be
numerous potential plaintiffs, each possibly able to make a showing that a particular
forum is best suited for the adjudication of the class' claim.'") (quoting Eichenhotlz v.
Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988)); Blumenthal, 480 F. Supp. at 472
(holding, in a securities class action, "[b]ecause this case is a class action, plaintiffs'
choice of forum cannot be accorded great weight. The fact that the action was brought
under a special venue statute does not change that result."); see also In re Nematron, 30 F.
Supp. 2d at 405-07 (in granting the transfer of a securities class action, noting that even if
the plaintiff's choice of forum were entitled to substantial deference by virtue of the
security acts' special venue provisions, "[i]n isolation, given its nature as a class action
brought under the federal securities law, the [plaintiff's choice of forum] weighs
moderately" in favor of transfer); Job Haines Home for the Aged v. Young, 936 F. Supp.
223, 229 (D. N.J. 1996) (granting motion to transfer a securities class action despite the
plaintiff's invocation of §77aa where the convenience and justice factors favored
transfer).

        In light of these authorities, plaintiffs' reliance on Vigman, which was not a class
action case, is inapposite. Because this is a class action and because plaintiffs do not
reside in this forum, plaintiffs choice of forum is entitled to only minimal weight, §77aa
notwithstanding.

### 2. Additional Considerations

        Plaintiffs argue that the instant action involves allegations that "directly relate" to
two class actions that were previously heard in this Court -- Checkmate Strategic Group,
Inc. v. Yahoo!, Inc., CV-05-4588 CAS (FMOx), and Online Merchant Sys. LLC v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **JS-6**

| Case No. | CV 07-3125 CAS (FMOx)<br>c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|-----|------|------|

| Title | IN RE: YAHOO! INC. |
|-------|--------------------|

Overture Servs., Inc., CV-05-4833 RGK (MANx) -- and one class action that is currently
pending in this Court -- In re Yahoo! Litig., CV-06-2737 CAS (FMOx). Opp'n 2.
Plaintiffs argue that because these actions share common facts with the instant action,
transferring this action to the Northern District would increase the risk of inconsistent
rulings and waste judicial resources and the parties' time.

    This argument is without merit. Although the cases referenced by plaintiffs are
class actions brought against Yahoo!, involving alleged click fraud and other types of
online adverting fraud, plaintiffs overlook the substantial differences between these cases
and the case at bar. Unlike the instant case, the cases referenced by plaintiffs are not
securities class actions. While the plaintiffs in this case are stockholders who allege that
defendants injured them by unlawfully manipulating Yahoo! stock price and making
material misrepresentations about the company upon which they relied in deciding to
purchase Yahoo! shares, in the foregoing cases referenced by plaintiffs, the plaintiffs are
*advertisers* who allege that Yahoo! defrauded them by engaging in various schemes to
inflate their advertising charges. Thus, the factual and legal questions raised in this case
on the one hand, and these other cases, on the other hand, are wholly different. The
presence of these other class actions in the Central District do not militate against the
transfer of the instant action.[5]

    Other considerations bearing on the interests of justice favor transfer. Because this
is a securities fraud action, plaintiffs' claims are based on defendants' alleged
misrepresentations and omissions, which "are deemed to 'occur' in the district where they
are transmitted or withheld, not where they are received." In re Nematron Corp. Secs.
Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998); In re Hanger Orthopedic Group, Inc.,
418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006). Plaintiffs contend that their claims give rise
to contacts in the Central District because their allegations are based on the failed efforts
to integrate Overture into Yahoo!'s business, the problems with Project Panama, and the
click fraud that occurred at Overture -- all of which allegedly occurred in the Central

---

[5] Although on May 31, 2007, the Court consented to the transfer of this action as
one related to In re Yahoo!, CV-06-2737 CAS (FMOx), the Court did so based on the
representation of counsel that the case is related. At that time, the Court did not consider
the application of the § 1404(a) factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **JS-6**

| Case No. | CV 07-3125 CAS (FMOx) c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|---|---|---|---|

| Title | IN RE: YAHOO! INC. |
|---|---|

District. However, plaintiffs do not dispute that the defendants' allegedly false public statements regarding Yahoo!'s revenues and performance predominantly occurred in the Northern District.

While evidence involving Project Panama, Overture, and its employees is likely to play a role in this action, this case turns on the allegedly false public statements and the decisions made by Yahoo!'s senior management, which indisputably occurred at Yahoo!'s headquarters. Because Yahoo!'s headquarters is the "factual center of this case, and the locus of all relevant decisionmaking," plaintiffs' claims have stronger contacts with the Northern District. In re AtheroGenics Sec. Litig., 2006 U.S. Dist. LEXIS 15786, at *12 (S.D.N.Y. 2006); In re Connetics Sec. Litig., 2007 U.S. Dist. LEXIS 38480, at *23 (S.D.N.Y. 2007) ("the operative facts are centered around the Northern District of California, wherein the defendants allegedly issued the misrepresentations that constitute the basis of this litigation. Thus, the location of the operative facts weighs heavily in favor of a transfer of venue."); Wojtunik v. Kealy, 2003 U.S. Dist. LEXIS 14734, at *17, n.7 (E.D. Pa. 2003) ("the nature of the action occurred in Arizona, where [the defendant] was based, since the misrepresentations and fraud would have occurred at [the defendant's] headquarters in Arizona, not where the engineering group was located."); see also In re Hanger Orthopedic, 418 F. Supp. 2d at *8-*9 (noting that while there is no "*per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered," nevertheless, "as a practical matter, such transfers are routine.").

Additionally, considerations regarding access to sources of proof weigh in favor of transfer. Defendants assert that Yahoo!'s corporate books and records are kept at is headquarters, including most of its documents relating to financial reporting. Kothari Decl. ¶¶ 5-7, 9, 10, 12-13. Defendants further assert that Yahoo!'s financial database and records regarding insiders' stock transactions in Yahoo! stock are maintained at its headquarters. Id. ¶ 14. By contrast, plaintiffs state that relevant documents are located in the Central District, but they do not identify these documents or discuss how they are important to this action. "Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, it nonetheless retains at least some relevance to the venue inquiry." In re Connetics, 2007 U.S. Dist. LEXIS 38480, at *16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | CV 07-3125 CAS (FMOx) c/w: CV07-3902-CAS(FMOx) | Date | March 10, 2008 |
|----------|---------------------------------------------------|------|----------------|

| Title | IN RE: YAHOO! INC. |
|-------|--------------------|

On balance, the Court, in its discretion, finds and concludes that the interests of justice weigh in favor of transferring this action. Likewise, the convenience of the parties and the witnesses factors favor granting defendants' motion to transfer. The Court GRANTS defendants' motion to transfer this action to the Northern District of California.

## III. CONCLUSION

In accordance with the foregoing, the Court GRANTS defendants' motion to transfer this action to the Northern District of California.

IT IS SO ORDERED.

                                                            00    :    05

                              Initials of Preparer          CMJ

(FMOx), CLOSED, CONSOLPT, DISCOVERY, RELATED-G, TRANSFERRED

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:07-cv-03902-CAS-FMO

Manfred Hacker v. Yahoo! Inc et al
Assigned to: Judge Christina A. Snyder
Referred to: Magistrate Judge Fernando M. Olguin
Lead case: 2:07-cv-03125-CAS-FMO
Member case: (View Member Case)
Related Case: 2:05-cv-04588-CAS-FMO
Cause: 28:1331 Fed. Question: Securities Violation

Date Filed: 06/15/2007
Date Terminated: 03/10/2008
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: Federal Question

## Plaintiff

**Manfred Hacker**
*on behalf of himself and all others*
*similarly situated*

represented by **Arthur L Shingler, III**
Scott and Scott
5455 Wilshire Boulevard
Suite 1800
Los Angeles, CA 90036
213-985-1274
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R Scott**
Scott and Scott
108 Norwich Avenue
PO Box 192
Colchester, CT 06415
860-537-5537
Email: drscott@scott-scott.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J Licato**
Scott and Scott
600 B Street, Suite 1500
San Diego, CA 92101
619-233-4565
Email: nlicato@scott-scott.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*



I hereby attest and certify on 4/18/08
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____ Deputy



0101

V.

## Defendant
## Yahoo! Inc

**Defendant**

**Terry S Semel**

**Defendant**

**Susan L Decker**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/15/2007 | 1 | COMPLAINT against defendants Yahoo! Inc, Terry S Semel, Susan L Decker.(Filing fee $ 350 Paid) Jury Demanded., filed by plaintiff Manfred Hacker.(rrey) (Entered: 06/21/2007) |
| 06/15/2007 |   | 20 Day Summons Issued re Complaint - (Discovery)[1] as to Yahoo! Inc, Terry S Semel, Susan L Decker. (rrey) (Entered: 06/21/2007) |
| 06/15/2007 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Manfred Hacker. (rrey) (Entered: 06/21/2007) |
| 06/19/2007 | 3 | STANDING ORDER regarding newly filed cases by Judge Otis D Wright II,(rrey) (Entered: 06/21/2007) |
| 06/26/2007 | 4 | NOTICE of Related Case(s) filed by Plaintiff Manfred Hacker. Related Case(s): CV 05-4588 CAS (FMOx), CV 07-3125 CAS (FMOx), CV 07-3902 ODW (JWJx) (rn) (Entered: 07/06/2007) |
| 07/06/2007 | 6 | APPLICATION of Non-Resident Attorney David R. Scott for Leave to Appear Pro Hac Vice. FEE PAID, filed by plaintiff Manfred Hacker. Lodged Proposed Order. (jp) (Entered: 07/19/2007) |
| 07/10/2007 | 5 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 07.02 - Related Case- filed. Related Case No: CV 05-4588 CAS (FMOx). Case transfered from Judge Jeffrey W. Johnson and Otis D Wright, II to Judge Christina A. Snyder and Fernando M. Olguin for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 07-3902 CAS (FMOx).Signed by Judge Christina A. Snyder (rn) (Entered: 07/10/2007) |
| 07/17/2007 | 7 | ORDER ON APPLICATION of Non-Resident Attorney to Appear in a Specific Case by David R. Scott as counsel for Plaintiff Manfred Hacker, designating Arthur L. Shingler as local counsel [6] is GRANTED by Judge Christina A. Snyder. (jp) (Entered: 07/19/2007) |
| 01/10/2008 | 8 | MINUTES (IN CHAMBERS) - ORDER CONSOLIDATING CASES by Judge Christina A. Snyder: The Court hereby ORDERS civil case numbers CV 07-3125 CAS (FMOx) and CV 07-3902 CAS (FMOx) were consolidated by Court Order of 8/20/2007. Civil case number CV 07-3902 CAS (FMOx) is consolidated into civil action number CV 07-3125 CAS (FMOx) for purposes of pretrial and discovery proceedings before this Court. All related actions that are subsequently filed in, or transferred to, this district shall be consolidated into this action for pretrial and discovery purposes. This Order shall apply to every such related action, |

| | | absent order of the Court. The docket in civil action number CV 07-3125 CAS (FMOx) shall constitute the Master Docket for this action. See document for details. Court Reporter: Not Present. (gk) (Entered: 01/11/2008) |
|---|---|---|
| 02/01/2008 | 9 | ORDER REGARDING (1) THE FILING OF DEFENDANTS' MOTION TO TRANSFER VENUE AND (2) REVISED BRIEFING SCHEDULE ON DEFENDANTS' MOTIONS TO DISMISS by Judge Christina A. Snyder: Upon Stipulation [36], IT IS HEREBY ORDERED that any motions to dismiss Plaintiffs' Consolidated Amended Complaint and supporting papers filed on behalf of Defendant Yahoo! Inc., and the Individual Defendants in this Court shall be filed no later than 21 days after the Court rules onDefendants' motion to transfer. Any papers in opposition to Defendants' motions to dismiss filed in this Court shall be filed no later than 45 days after the motions to dismiss are filed. Any reply papers filed in this Court shall be filed no later than 30 days after Plaintiffs' opposition papers are filed. Any hearing on Defendants' motions to be dismiss in this Court shallbe set at the time the motions are filed. The hearing that was set for 6/2/2008, is vacated. (gk) (Entered: 02/04/2008) |
| 03/06/2008 | 10 | ORDER GRANTING PLAINTIFFS EX PARTE APPLICATION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS REPLY BRIEF IN ACCORDANCE WITH LOCAL RULE 7-10 by Judge Christina A. Snyder : The Court having considered Plaintiffs Ex Parte Application for Leave to File Response to Defendants Reply Brief in Accordance with Local Rule 7-10 (the Application), related briefing and the Courts files, hereby orders: Plaintiffs Sur-Reply in Opposition to Defendants Reply in Support of Motion to Transfer Venue Under 28 U.S.C. §1404(a), and the Declaration of Spencer A. Burkholz in support thereof, which are attached to the Application as Tabs 1 and 2, respectively, are hereby deemed filed as of this date. IT IS SO ORDERED. (csl) (Entered: 03/07/2008) |
| 03/06/2008 | 11 | PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 USC 1404(a) filed by Plaintiffs. (csl) (Entered: 03/07/2008) |
| 03/10/2008 | 12 | MINUTES OF Motion Hearing held before Judge Christina A. Snyder re: Defendants' Motion to Transfer Venue Under 28 USC 1404(a): The Court GRANTS defendants' motion to transfer this action to the Northern District of California. IT IS SO ORDERED. (Made JS-6. Case Terminated.) Court Reporter: Laura Elias. (mmu) (Entered: 03/17/2008) |
| 04/18/2008 | 13 | TRANSMITTAL of documents - mailed all original, manually filed documents in case file (documents numbered 1-7), and certified copies of the Civil Minutes transferring venue and civil docket sheet to the USDC, Northern District of California (San Francisco). Transferee court instructed to access our website through PACER for electronic filings. (gk) (Entered: 04/18/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/18/2008 16:33:49 | | | |
| **PACER Login:** | us3877 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-03902-CAS-FMO |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| MANFRED HACKER, Individually and On Behalf of All Others Similarly Situated | YAHOO! INC, TERRY S. SEMEL AND SUSAN L. DECKER |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Palm Beach County, Florida | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) SCOTT+SCOTT LLP, 600 B Street, Suite 1500, San Diego, CA 92101 (619) 233-4565 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Private Securities Litigation Reform Act; Violation of Section 10(b) and 20(a)of the 1934 Exchange Act and 10b-5; FRCP Rule 23

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | | ☐ 370 Other Fraud | | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 371 Truth in Lending | ☐ 510 Motions to Vacate Sentence | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | Habeas Corpus | ☐ 730 Labor/Mgmt. |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 530 General | Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities /Exchange | | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 625 Drug Related | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | Seizure of Property 21 USC 881 | ☐ 840 Trademark SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed?   ☑ No   ☐ Yes

If yes, list case number(s):

**CV 07 3902**

**FOR OFFICE USE ONLY:**   Case Number: _____

| CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☐ No    ☑ Yes

If yes, list case number(s): CV-06-2737-CAS(FMO), CV-07-03125-CAS(FMOx)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or

   ☑ B.  Call for determination of the same or substantially related questions of law and fact; or

   ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

   ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Florida

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

Santa Clara

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

Santa Clara

X. SIGNATURE OF ATTORNEY (OR PRO PER):                                                          Date        6/15/2007

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

1   SCOTT + SCOTT LLP
    Arthur L. Shingler III (181719)
2   5455 Wilshire Blvd., Suite 1800
    Los Angeles, CA 90036
3   Tel.: 213/985-1274
    Fax: 213/985-1278
4         -and-
    Nicholas J. Licato (228402)
5   600 B Street, Suite 1500
    San Diego, CA 92101
6   Tel.: 619/233-4565
    Fax: 619/233-0508
7   Email: ashingler@scott-scott.com

8
    SCOTT + SCOTT LLP
9   David R. Scott
    108 Norwich Avenue
10  P. O Box 192
    Colchester, CT 06415
11  Tel: 860/537-5537
    Fax: 860/537-4432
12  Email: drscott@scott-scott.com

13
    Attorneys for Plaintiff
14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

18  MANFRED HACKER, on Behalf of    )   CV 07 39020 DW
19  Himself and All Others Similarly )                (JWx)
    Situated,                        )   Case No.
20                                   )
                Plaintiff,           )   CLASS ACTION
21                                   )
         vs.                         )
22                                   )   CLASS ACTION COMPLAINT
    YAHOO! INC., TERRY S. SEMEL,     )   FOR VIOLATIONS OF THE
23  AND SUSAN L. DECKER,             )   FEDERAL SECURITIES LAWS
                                     )
24                                   )
                                     )
25              Defendants.          )
                                     )
26

27

28



DOCKETED ON CM

JUN 2 1 2007

BY _____ 019

1   Plaintiff individually and on behalf of all other persons similarly situated, by
2   plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges
3   the following based upon personal knowledge as to plaintiff and plaintiff's own acts,
4   and upon information and belief as to all other matters, based on, *inter alia*, the
5   investigation conducted by and through plaintiff's attorneys, which included, amongst
6   other things, a review of the Defendants' press releases, Securities and Exchange
7   Commission ("SEC") filings by Yahoo! Inc. ("Yahoo!" or the "Company") and its
8   related entities (collectively "Defendants"), media reports about the Defendants,
9   including media reports and certain litigation documents, including the Consolidated
10  Second Amended Class Action Complaint, filed on November 20, 2006, in Draucker
11  Development and True Communication Inc v. Yahoo! Inc et al, (currently styled as *In*
12  *re Yahoo Litigation*), Civil Docket No. 2:06-cv-02737-CAS-FMO (C.D. Cal. Western
13  Division – Los Angeles). Plaintiff believes that substantial evidentiary support will
14  exist for the allegations set forth herein after a reasonable opportunity for discovery.

15                          **SUMMARY AND OVERVIEW**

16

17          1.      This is a securities class action on behalf of all purchasers of the publicly
18  traded securities of Yahoo! Inc. ("Yahoo!" or the "Company") between April 8, 2004
19  and July 18, 2006 (the "Class Period"), against Yahoo! and certain of its officers and
20  directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

21          2.      Yahoo! Inc. and its subsidiaries provide Internet services to users and
22  businesses worldwide. It offers online properties and services to users; and a range of
23  tools and marketing solutions to businesses. The Company's search engine,
24  Marketplace, informational and communication products are used globally, both to
25  navigate the Internet, and as Internet advertising, content and services.

26          3.      Yahoo! experienced rapid growth in its online traffic and services over
27  the past 5 years, serving to propel the price of Yahoo! Stock to values just above $40
28

1  per share during the Class Period. Unbeknownst to investors, the illusory appearance
2  of positive business prospects served to conceal serious operational flaws and defects
3  in the very technologies Yahoo! used to deliver content, specifically its critical
4  revenue-generating advertising content.

5      4.    During the Class Period, Defendants made false and misleading
6  statements regarding the Company's business prospects, financial results and forward
7  guidance. Specifically, Defendants failed to disclose to the investing public the
8  following adverse facts: (a) false, misleading and deceptive means were being used to
9  promote and sell the Company's business to business ("B2B") advertising services to
10 business customers seeking a presence for the generation of marketing opportunities
11 on the Internet; (b) revenues generated from Yahoo! B2B activities were
12 unsustainable and fraudulent in nature, as Yahoo! misrepresented and deceptively
13 described the Company's abilities to deliver the claimed attributes and quality of its
14 content and services; (c) Yahoo! advertising services were operationally flawed and
15 defective, and did not favorably compare to the quality and cost of B2B services
16 offered by its competitors; and (d) Yahoo! was, in fact losing market share to other
17 Internet search providers.

18     5.    As a result of defendants' false statements, Yahoo! stock traded at
19 artificially inflated prices during the Class Period. Then, on July 18, 2006, the
20 Company issued a shocking press release which detailed an unexpected and stunning
21 drop in revenues. As a result, on July 18, 2006, shares of Yahoo! stock plunged $7.04
22 per share, for a loss of over 21% percent, to close on July 18, 2006 at $25.20 per
23 share, on extremely high volume of over 204.3 million shares.

24                 **JURISDICTION AND VENUE**

25     6.    Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted
26 herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

27     7.    Venue is proper in this District pursuant to §27 of the 1934 Act. Yahoo!
28 Inc.'s corporate headquarters is located in this District and many of the acts or

1    practices complained of herein occurred in substantial part in this District.

2                                    **THE PARTIES**

3        8.    Plaintiff purchased Yahoo! publicly traded securities as described in the

4    attached certification and was damaged thereby.

5        9.    Defendant Yahoo! and its subsidiaries provide Internet services to users

6    and businesses worldwide. It offers online properties and services to users; and a

7    range of tools and marketing solutions to businesses. The Company's search engine,

8    Marketplace, informational and communication products are used globally, both to

9    navigate the Internet, and as Internet advertising, content and services. Yahoo!'s

10   principal business offices are located at 701 First Avenue, Sunnyvale, CA 94089.

11       10.   Defendant Terry S. Semel ("Semel") was, during the relevant period, the

12   CEO and Chairman of Yahoo!. Defendant Semel assisted in the preparation of the

13   false financial statements and repeated the contents therein to the market.

14       11.   Defendant Susan L. Decker ("Decker") was, during the relevant period,

15   CFO and Head of the Advertiser and Publisher Group of Yahoo!. Defendant Decker

16   assisted in the preparation of the false financial statements and repeated the contents

17   therein to the market.

18       12.   Defendants Semel and Decker are referred to herein as the "Individual

19   Defendants."    The Individual Defendants, because of their positions with the

20   Company, possessed the power and authority to control the contents of Yahoo!'s

21   quarterly reports, press releases and presentations to securities analysts, money and

22   portfolio managers and institutional investors, *i.e.*, the market.   Each Individual

23   Defendant was provided with copies of the Company's reports and press releases

24   alleged herein to be misleading prior to or shortly after their issuance and had the

25   ability and opportunity to prevent their issuance or cause them to be corrected.

26   Because of their positions and access to material non-public information available to

27   them but not to the public, each of these defendants knew that the adverse facts

28   specified herein had not been disclosed to and were being concealed from the public

- 3 -

1    and that the positive representations which were being made were then materially
2    false and misleading. The Individual Defendants are liable for the false statements
3    pleaded herein at ¶¶15-17, as those statements were each "group-published"
4    information, the result of the collective actions of the Individual Defendants.

5                                    SCIENTER

6           13.    In addition to the above-described involvement, each Individual
7    Defendant had knowledge of Yahoo!'s problems and was motivated to conceal such
8    problems. Defendant Semel, as CEO, and Decker, as CFO, were responsible for
9    financial reporting and communications with the market. Many of the internal reports
10   showing Yahoo!'s forecasted and actual growth were prepared by the finance
11   department under their direction. Each Individual Defendant sought to demonstrate
12   that he could lead the Company successfully and generate the growth expected by the
13   market.

14               **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

15          14.    Each defendant is liable for (i) making false statements, *or* (ii) failing to
16   disclose adverse facts known to them about Yahoo!. Defendants' fraudulent scheme
17   and course of business that operated as a fraud or deceit on purchasers of Yahoo!
18   common stock was a success, as it (i) deceived the investing public regarding
19   Yahoo!'s prospects and business; (ii) artificially inflated the prices of Yahoo!'s
20   common stock; and (iii) caused Plaintiff and other members of the Class to purchase
21   Yahoo! common stock at inflated prices.

22                   **DEFENDANTS' FALSE AND MISLEADING**
23              **STATEMENTS ISSUED DURING THE CLASS PERIOD**

24          15.    On April 7, 2004, the Company issued a press release entitled, "Yahoo!
25   Reports First Quarter 2004 Financial Results - Company Posts Revenues of $758
26   Million, Operating Income of $132 Million, Operating Income Before Depreciation
27   and Amortization of $211 Million." The release stated in part:

28

1    Yahoo! Inc. (Nasdaq:YHOO) today reported results for the first

2    quarter ended March 31, 2004.

3

4    "Yahoo!'s performance surpassed even our high expectations,

5    delivering the most successful quarter in the Company's history," said

6    Terry Semel, chairman and chief executive officer, Yahoo!. "With our

7    products more popular than ever before, we have experienced success

8    across our entire business including strong growth in our fee-based and

9    marketing services."

10    -- Revenues were $758 million in the first quarter of 2004,

11    compared to $283 million in the same period of 2003.

12

13    -- Revenues excluding traffic acquisition costs ("TAC") were

14    $550 million in the first quarter of 2004, compared to $283 million for

     the same period of 2003.

15

16    -- Gross profit for the first quarter of 2004 was $476 million,

17    compared to $240 million for the same period of 2003.

18

19    -- Operating income for the first quarter of 2004 was $132

20    million, compared to $55 million for the same period of 2003.

21    -- Operating income before depreciation and amortization for the

22    first quarter of 2004 was $211 million, compared to $85 million for the

23    same period of 2003.

24

25    -- Cash flow from operating activities for the first quarter of 2004

26    was $236 million, compared to $99 million for the same period of 2003.

27    -- Free cash flow for the first quarter of 2004 was $197 million,

28    compared to $78 million for the same period of 2003.

- 5 -

1

2

3

4

5

6

7

8

9

"Yahoo! is off to a great start in 2004. Our growth is a result of very impressive performance from our ongoing operations, leveraged further by recent acquisitions," said Susan Decker, chief financial officer, Yahoo!. "Looking forward, we are focused on making the appropriate investments and capital allocation decisions to help ensure sustainable, long-term growth. Due to our increased optimism about our business, we have raised our financial outlook for the full year 2004."

First Quarter 2004 Financial Highlights

10

11

12

13

14

Cash flow from operating activities and Free cash flow: Cash flow from operating activities for the first quarter of 2004 totaled $236 million, compared to $99 million for the same period of 2003. Free cash flow for the first quarter of 2004 totaled $197 million, a 153 percent increase over the $78 million reported for the same period of 2003.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cash, cash equivalents and investments in marketable debt and equity securities increased by approximately $219 million to $2,790 million at March 31, 2004, compared to $2,571 million at December 31, 2003. In addition to the free cash flow of $197 million generated for the quarter ended March 31, 2004, the Company increased its cash, cash equivalents and investments in marketable debt and equity securities balances by $92 million related to issuance of common stock from exercise of employee stock options and approximately $24 million related to other investing activities, offset by approximately $50 million used to enter into a structured stock repurchase transaction and approximately $44 million used for acquisitions completed in the first quarter of 2004, net of cash acquired. The structured stock repurchase will mature in the third quarter of 2004, at which point depending on the

1    price per share of Yahoo! shares, Yahoo! will either repurchase shares or

2    receive the $50 million investment and a premium.

3

4    Revenues: In the first quarter of 2004, Yahoo! reported revenues

5    of $758 million, a 168 percent increase compared to the $283 million

6    reported in the same period in 2003.

7    Marketing services revenue for the first quarter of 2004 totaled

8    $635 million, a 235 percent increase from the $190 million reported in

9    the same period in 2003. This amount includes approximately $10

10   million related to a one-time gain from unredeemed third party loyalty

11   program points that expired during the quarter. The year over year

12   increase in marketing services revenue (excluding the gain related to the

13   points expiration) resulted from a 48 percent growth in Yahoo!'s organic

14   marketing services revenues, primarily in the search and marketplace

15   properties,    and    incremental    revenue    associated    with

16   acquisitionscompleted during the past year.

17

18   Fees revenue for the first quarter of 2004 totaled $88 million, a 39

19   percent increase compared to the $64 million reported in the same period

20   in 2003. This increase was primarily driven by the growth in the number

21   of paying relationships for Yahoo!'s premium services, which were

22   approximately 5.8 million at March 31, 2004 compared to approximately

23   2.9 million at March 31, 2003.

24   Listings revenue for the first quarter of 2004 totaled $34 million, a

25   16 percent increase compared to the $29 million reported in the same

26   period in 2003. This increase was primarily driven by our search and

27   marketplace listings.

28

- 7 -

1       Revenues excluding TAC and Gross profit: Revenues excluding
2  TAC for the first quarter of 2004 totaled $550 million, a 94 percent
3  increase compared to the $283 million in the same period of 2003. Gross
4  profit for the first quarter of 2004 totaled $476 million, compared to
5  $240 million in the same period of 2003. The increase in revenues
6  excluding TAC for the quarter ended March 31, 2004, when compared to
7  the same period in 2003, resulted from the combination of a strong
8  increase in revenues from Yahoo!'s organic marketing services revenues,
9  as well as the incremental revenue associated with the acquisitions
10  completed during the past year.

11
12       Operating income and Operating income before depreciation
   and amortization:
13

14       Operating income for the first quarter of 2004 totaled $132
15  million, compared to $55 million in the same period of 2003. Operating
16  income before depreciation and amortization for the first quarter of 2004
17  totaled $211 million, a 149 percent increase compared to the $85 million
18  achieved in the same period of 2003. The increase in operating income
19  and operating income before depreciation and amortization for the
20  quarter ended March 31, 2004, when compared to the same period in
21  2003, reflects strong growth in revenues excluding TAC while
22  maintaining ongoing cost discipline.

23
24       Net Income: Net income for the first quarter of 2004 was $101
25  million or $0.14 per diluted share (which included $0.01 per diluted
   share related to the one-time gain from unredeemed third party loyalty
26  program points that expired during the quarter), compared with $47
27  million or $0.08 per diluted share for the same period of 2003.
28

1    Stock Split: Yahoo!'s Board of Directors approved a two-for-

2    one split of all outstanding shares of the Company's common stock,

3    payable May 11, 2004 to stockholders of record on April 26, 2004.

4

5    Please refer to the "Note to Unaudited Condensed Consolidated

6    Statements of Operations" for definition of these key financial measures

7    and "Business Outlook" attached to this press release.

8    ***

9

10   16.    On January 18, 2005, Yahoo! issued a press release entitled, "Yahoo!

11   Reports Fourth Quarter and Full Year 2004 Financial Results." The release stated in

12   part:

13   SUNNYVALE, Calif. -- Company Posts Full Year Revenues of

14   $3,575 Million, Operating Income of $689 Million, Operating Income

15   Before Depreciation and Amortization of $1,032 Million

16   Yahoo! Inc. (Nasdaq:YHOO) today reported results for the fourth

17   quarter and full year ended December 31, 2004.

18

19   "Yahoo! moved at an impressive pace in the fourth quarter,

20   capping another record year for the Company. Our users were more

21   engaged in 2004 than ever before because of Yahoo!'s relentless focus on

22   delivering the most innovative products and services on the Internet,"

23   said Terry Semel, chairman and chief executive officer, Yahoo!.

24   "Yahoo! also benefited from the growing acceptance of online

25   advertising with marketers who recognize its effectiveness and are

26   therefore increasingly using this platform to reach their consumers."

27   --Revenues were $1,078 million for the fourth quarter of 2004, a

28   62 percent increase compared to $664 million for the same period of

2003.

     --Revenues excluding traffic acquisition costs ("TAC") were $785 million for the fourth quarter of 2004, a 54 percent increase compared to $511 million for the same period of 2003.

     --Gross profit for the fourth quarter of 2004 was $691 million, a 56 percent increase compared to $443 million for the same period of 2003.

     --Operating income for the fourth quarter of 2004 was $235 million, a 149 percent increase compared to $94 million for the same period of 2003.

     --Operating income before depreciation and amortization for the fourth quarter of 2004 was $327 million, an 84 percent increase compared to $178 million for the same period of 2003.

     --Cash flow from operating activities for the fourth quarter of 2004 was $337 million, a 231 percent increase compared to $102 million for the same period of 2003.

     --Free cash flow for the fourth quarter of 2004 was $251 million, a 172 percent increase compared to $92 million for the same period of 2003.

     --Net income for the fourth quarter of 2004 was $373 million or $0.25 per diluted share (including a net impact of $185 million, or $0.13 per diluted share, related to the sale of an investment). Excluding this gain, net income for the fourth quarter was $187 million, or $0.13 per diluted share. This compares with net income of $75 million or $0.05 per

diluted share for the same period of 2003.

"Yahoo!'s strong fourth quarter performance completes our third consecutive year of delivering strong organic revenue growth, expanding operating margins, and generating substantial free cash flow," said Susan Decker, chief financial officer, Yahoo!. "We are attracting more and more users to Yahoo!'s network of services and driving their usage deeper with more relevant products and services. This deeper usage is the real magic behind the surpassing of our financial objectives."

--Revenues for the year ended December 31, 2004 were $3,575 million, a 120 percent increase compared to $1,625 million for 2003.

--Revenues excluding TAC for 2004 were $2,600 million, a 77 percent increase compared to $1,473 million for 2003.

--Gross profit for 2004 was $2,276 million, an 80 percent increase compared to $1,267 million for 2003.

--Operating income for 2004 was $689 million, a 133 percent increase compared to $296 million for 2003.

--Operating income before depreciation and amortization for 2004 was $1,032 million, a 116 percent increase compared to $477 million for 2003.

--Cash flow from operating activities for 2004 was $1,090 million, a 155 percent increase compared to $428 million for 2003.

--Free cash flow for 2004 was $844 million, a 149 percent increase compared to $339 million for 2003.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

--Net income for 2004 was $840 million or $0.58 per diluted share (including a net impact of $314 million, or $0.22 per diluted share, related to the sale of an investment and the associated tax benefit resulting from fully reserved capital losses becoming realizable). Excluding this gain, net income for 2004 was $526 million, or $0.36 per diluted share. This compares with net income of $238 million or $0.18 per diluted share for 2003.

--The provision for income taxes of $438 million yielded an effective tax rate of 37% for 2004 as a result of the previously described tax benefit associated with the capital loss carryforwards. The provision for income taxes for 2003 was $147 million, and yielded an effective tax rate of 43%.

Fourth Quarter and Year Ended 2004 Financial Highlights

Marketing services revenue for the fourth quarter of 2004 totaled $911 million, a 67 percent increase from the $545 million reported for the same period of 2003. Marketing services revenue for the year ended December 31, 2004 totaled $3,002 million, a 150 percent increase from the $1,200 million reported for 2003. Listings revenue for the fourth quarter of 2004 totaled $38 million, a 15 percent increase compared to the $33 million reported for the same period of 2003. Listings revenue for the year ended December 31, 2004 totaled $147 million, a 16 percent increase compared to the $127 million reported for 2003. The year over year increases in marketing services and listings revenues resulted from growth in Yahoo!'s organic revenue and incremental revenue associated with acquisitions completed during the past year. Fees revenue for the fourth quarter of 2004 totaled $129 million, a 52 percent increase

1   compared to the $85 million reported for the same period of 2003. Fees
2   revenue for the year ended December 31, 2004 totaled $426 million, a 43
3   percent increase compared to the $298 million reported for 2003. The
4   year over year increases in fees revenues were primarily driven by the
5   growth in the number of paying relationships for Yahoo!'s premium
6   services, which were approximately 8.4 million at December 31, 2004
7   compared to approximately 4.9 million at December 31, 2003.

8                                     ***
9

10   17.    On January 17, 2006, the Company issued a press release entitled,
11   "Yahoo! Reports Fourth Quarter and Full Year 2005 Financial Results - Full Year
12   Revenues - $5,258 Million, Operating Income - $1,108 Million, Operating Income
13   Before Depreciation and Amortization - $1,557 Million." The release stated in part:
14          SUNNYVALE, Calif. – January 17, 2006 - Yahoo! Inc. (Nasdaq:
15   YHOO) today reported results for the fourth quarter and full year ended
16   December 31, 2005.

17
18   "Yahoo! has a strong track record of focusing and delivering on
19   some of the biggest opportunities on the Internet," said Terry Semel,
     chairman and chief executive officer, Yahoo!. "In 2005, Yahoo!
20   continued to achieve significant results by providing some of the most
21   innovative services to our hundreds of millions of consumers and
22   deepening both our global reach and user engagement. As we look
23   ahead, we will continue to focus on creating the best consumer
24   experience, finding new ways to engage our audience and delivering the
25   best value for our advertisers."
26

27          Fourth Quarter 2005 Financial Results

28

- 13 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

• Revenues were $1,501 million for the fourth quarter of 2005, a 39 percent increase compared to $1,078 million for the same period of 2004.

- Marketing services revenue was $1,315 million for the fourth quarter of 2005, a 39 percent increase compared to $943 million for the same period of 2004.

-Fees revenue was $186 million for the fourth quarter of 2005, a 38 percent increase compared to $135 million for the same period of 2004.

• Revenues excluding traffic acquisition costs ("TAC") were $1,068 million for the fourth quarter of 2005, a 36 percent increase compared to $785 million for the same period of 2004.

◦ Gross profit for the fourth quarter of 2005 was $928 million, a 34 percent increase compared to $691 million for the same period of 2004.

◦ Operating income for the fourth quarter of 2005 was $329 million, a 40 percent increase compared to $235 million for the same period of 2004.

• Operating income before depreciation and amortization for the fourth quarter of 2005 was $459 million, a 40 percent increase compared to $327 million for the same period of 2004.

◦ Cash flow from operating activities for the fourth quarter of 2005 was $481 million, a 43 percent increase compared to $337 million for the same period of 2004.

• Free cash flow for the fourth quarter of 2005 was $330 million, a

1    31 percent increase compared to $251 million for the same period of

2    2004.

3

4    ∘ Net income for the fourth quarter of 2005 was $683 million or

5    $0.46 per diluted share compared to $373 million or $0.25 per diluted

6    share for the same period of 2004.

7    ∘ Adjusted net income for the fourth quarter of 2005 was $247

8    million or $0.16 per diluted share compared to $187 million or $0.13 per

9    diluted share for the same period of 2004.

10

11    ∘ The provision for income taxes for the fourth quarter of 2005

12    was $18 million and yielded an effective tax rate of 3 percent as a result

13    of a tax benefit related to a subsidiary restructuring transaction

14    completed in the quarter. The provision for income taxes for the fourth

15    quarter of 2004 was $234 million, and yielded an effective tax rate of 40

16    percent.

17    ∘ Explanations of the Company's non-GAAP financial measures

18    and the related reconciliations to the GAAP financial measures the

19    Company considers most comparable are included in the acCompanying

20    "Note to Unaudited Condensed Consolidated Statements of Operations"

21    and the "Reconciliations to Unaudited Condensed Consolidated

22    Statements of Operations".

23

24    "We continued to execute on our plan during both the fourth

25    quarter and the full year 2005 – delivering very strong revenue growth,

26    profitability and returns on our significant free cash flow – while also

27    investing in our business to position the Company for future growth,"

28    said Susan Decker, chief financial officer, Yahoo!. "In 2006, we will

focus on continuing to enhance our advertising products, offering the most effective solutions to our advertisers and publishers, while also seeking to generate maximum value for our network."

Full Year 2005 Financial Results

∘ Revenues for the year ended December 31, 2005 were $5,258 million, a 47 percent increase compared to $3,575 million for 2004.

-Marketing services revenue was $4,594 million for 2005, a 47 percent increase compared to $3,127 million for 2004.

-Fees revenue was $664 million for 2005, a 48 percent increase compared to $447 million for 2004.

∘ Revenues excluding TAC for 2005 were $3,696 million, a 42 percent increase compared to $2,600 million for 2004.

∘ Gross profit for 2005 was $3,225 million, a 42 percent increase compared to $2,276 million for 2004.

∘ Operating income for 2005 was $1,108 million, a 61 percent increase compared to $689 million for 2004.

∘ Operating income before depreciation and amortization for 2005 was $1,557 million, a 51 percent increase compared to $1,032 million for 2004.

∘ Cash flow from operating activities for 2005 was $1,711 million, a 57 percent increase compared to $1,090 million for 2004.

• Free cash flow for 2005 was $1,292 million, a 53 percent increase compared to $844 million for 2004.

- 16 -

1        • Net income for 2005 was $1,896 million or $1.28 per diluted

2    share compared to $840 million or $0.58 per diluted share for 2004.

3

4        • Adjusted net income for 2005 was $854 million or $0.58 per

    diluted share compared to $525 million or $0.36 per diluted share for the

5

6    same period of 2004.

7        • The provision for income taxes for 2005 was $768 million and

8    yielded an effective tax rate of 30 percent for 2005 as a result of a tax

9    benefit related to a subsidiary restructuring transaction completed in the

10    fourth quarter of 2005. The provision for income taxes for 2004 was

11    $438 million, and yielded an effective tax rate of 37 percent.

12

13    Segment Financial Results

14        • United States revenues for the fourth quarter of 2005 were

15    $1,056 million, a 36 percent increase compared to $775 million for the

16    same period of 2004.

17

18        • International revenues for the fourth quarter of 2005 were $445

    million, a 47 percent increase compared to $303 million for the same

19

20    period of 2004.

21        • United States segment operating income before depreciation and

22    amortization for the fourth quarter of 2005 was $352 million, a 26

23    percent increase compared to $278 million for the same period of 2004.

24

25        • International segment operating income before depreciation and

    amortization for the fourth quarter of 2005 was $107 million, a 118

26

27    percent increase compared to $49 million for the same period of 2004.

28        • United States revenues for the year ended December 31, 2005

1    were $3,668 million, a 38 percent increase compared to $2,653 million

2    for 2004.

3
4           • International revenues for the year ended December 31, 2005
5    were $1,590 million, a 73 percent increase compared to $921 million for
6    2004.

7           • United States segment operating income before depreciation and

8    amortization for the year ended December 31, 2005 was $1,220 million,

9    a 37 percent increase compared to $891 million for 2004.

10
11          • International segment operating income before depreciation and
12   amortization for the year ended December 31, 2005 was $338 million, a
13   140 percent increase compared to $141 million for 2004.

14          Cash Flow Information

15          Free cash flow was $330 million in the fourth quarter of 2005
16   compared to $251 million for the same period of 2004. In addition to free
17   cash flow, Yahoo! generated $369 million from the issuance of common
18   stock as a result of the exercise of employee stock options, and a net
19   $141 million from structured stock repurchase transactions. These
20   increases were offset by $1,571 million used for acquisitions and $14
21   million used for direct stock repurchases. Cash, cash equivalents and
22   investments in marketable debt securities were $4,000 million at
23   December 31, 2005 as compared to $4,764 million at September 30,
24   2005, a reduction of $764 million.
25

26          Free cash flow was $1,292 million for the year ended December

27   31, 2005 compared to $844 million for 2004. In addition to free cash

28   flow, Yahoo! generated $747 million from the issuance of common stock

1     as a result of the exercise of employee stock options and $1,006 million

2     was received as proceeds from sales of marketable equity securities.

3     These increases were offset by $1,698 million used for acquisitions,

4     $388 million used for direct stock repurchases and a net $611 million

5     used in structured stock repurchase transactions. Cash, cash equivalents

6     and investments in marketable debt securities were $4,000 million at

7     December 31, 2005 as compared to $3,742 million at December 31,

8     2004, an increase of $258 million.

9

10    Please refer to the "Note to Unaudited Condensed Consolidated

11    Statements of Operations" for definitions of certain key financial

12    measures used here and in the "Business Outlook" attached to this press

13    release.

14                                    * * *

15

16    18.    Defendants' Class Period statements in ¶¶15-17, regarding their quarterly

17 and annualized financial results and profits were false and misleading. Specifically,

18 Defendants failed to disclose to the investing public the following adverse facts: (a)

19 false, misleading and deceptive means were being used to promote and sell the

20 Company's business to business ("B2B") advertising services to business customers

21 seeking a presence for the generation of marketing opportunities on the Internet; (b)

22 revenues generated from Yahoo! B2B activities were unsustainable and fraudulent in

23 nature, as Yahoo! misrepresented and deceptively described the Company's abilities

24 to deliver the claimed attributes and quality of its content and services; (c) Yahoo!

25 advertising services were operationally flawed and defective, and did not favorably

26 compare to the quality and cost of B2B services offered by its competitors; and (d)

27 Yahoo! was, in fact losing marketshare to other Internet search providers.

28

                                    - 19 -

1          **THE TRUTH IS REVEALED**

2          19.    On July 18, 2006, the Company issued a shocking press release entitled,

3    "Yahoo! Reports Second Quarter 2006 Financial Results - Revenues - $1,576 Million,

4    Operating  Income  -  $230  Million,  Operating  Income  Before  Depreciation,

5    Amortization and Stock-Based Compensation Expense - $457 Million."  The release

6    stated in part:

7          SUNNYVALE, Calif. – July 18, 2006 - Yahoo! Inc. (Nasdaq:

8          YHOO) today reported results for the second quarter ended June 30,

9          2006.

10

11          "Yahoo! continued to make major strides this quarter against some

12          of our most valuable business initiatives, further strengthening our

13          foundation for ongoing growth," said Terry Semel, chairman and chief

14          executive  officer,  Yahoo!.  "Our  ability  to  remain  focused  on  our

15          advertiser and consumer communities, while also continuing to innovate

16          and take advantage of new opportunities in the marketplace, has put us in

17          a great position."

18          Second Quarter 2006 Financial Results

19

20          ° Revenues were $1,576 million for the second quarter of 2006, a

21          26 percent increase compared to $1,253 million for the same period of

22          2005.

23          • Marketing services revenue was $1,386 million for the second

24          quarter of 2006, a 27 percent increase compared to $1,094 million for the

25          same period of 2005.

26          • Fees revenue was $190 million for the second quarter of 2006, a

27          19 percent increase compared to $159 million for the same period of

28

- 20 -

1    2005.

2
3    • Revenues excluding traffic acquisition costs ("TAC") were
4    $1,123 million for the second quarter of 2006, a 28 percent increase
5    compared to $875 million for the same period of 2005.

6    ◦ Gross profit for the second quarter of 2006 was $930 million, a
7    24 percent increase compared to $753 million for the same period of
8    2005.

9
10   ◦ Operating income for the second quarter of 2006 was $230
11   million (including $100 million for stockbased compensation expense
     recorded under the fair value method), a 12 percent decrease compared
12   to $261 million (including $11 million for stock-based compensation
13   expense recorded under the intrinsic value method) for the same period
14   of 2005.
15

16   ◦ Operating income before depreciation, amortization and stock-
17   based compensation expense for the second quarter of 2006 was $457
18   million, a 24 percent increase compared to $368 million for the same
19   period of 2005.

20
21   ◦ Cash flow from operating activities for the second quarter of
22   2006 was $430 million, a 6 percent increase compared to $404 million
     for the same period of 2005.
23

24   • Free cash flow for the second quarter of 2006 was $358 million,
25   a 19 percent increase compared to $300 million for the same period of
26   2005.

27
     • Net income for the second quarter of 2006 was $164 million or
28

1   $0.11 per diluted share (including $73 million of stock-based

2   compensation expense, net of tax, recorded under the fair value method),

3   compared to $755 million or $0.51 per diluted share for the same period

4   of 2005 (including $7 million of stock-based compensation expense, net

5   of tax, recorded under the intrinsic value method) or compared to

6   adjusted net income of $152 million or $0.10 per diluted share (including

7   $57 million of stock-based compensation, net of tax, calculated under the

8   fair value method and excluding gains of $552 million, net of tax, on the

9   sale of certain investments and settlements) for the second quarter of

10  2005.

11
12  ◦ Adjusted net income excluding stock-based compensation

13  expense, net of tax, recorded under the fair value method for the second

14  quarter of 2006 was $237 million or $0.16 per diluted share. This

15  compares to adjusted net income of $209 million or $0.14 per diluted

16  share, excluding stock-based compensation expense, net of tax, recorded

17  under the intrinsic value method and gains on the sale of certain

18  investments and settlements, net of tax, for the same period of 2005.

19  ◦ Explanations of the Company's non-GAAP financial measures

20  and the related reconciliations to the GAAP financial measures the

21  Company considers most comparable are included in the acCompanying

22  "Note to Unaudited Condensed Consolidated Statements of Operations"

23  and the "Reconciliations to Unaudited Condensed Consolidated

24  Statements of Operations".

25  "We continued to execute on our plan in the second quarter –

26  delivering strong revenue growth, profitability, and returns on our

27  significant free cash flow – while also investing in our business to

28

- 22 -

1    position the Company for future growth," said Susan Decker, chief

2    financial officer, Yahoo! "We believe these investments will expand our

3    unique collection of online services to best meet the objectives of our

4    customers and users, generating maximum value for our network."

5
6    Segment Financial Results

7    ◦ United States revenues for the second quarter of 2006 were

8    $1,070 million, a 23 percent increase compared to $870 million for the

9    same period of 2005.

10
11    • International revenues for the second quarter of 2006 were $506

12    million, a 32 percent increase compared to $383 million for the same

13    period of 2005.

14    ◦ United States segment operating income before depreciation,

15    amortization and stock-based compensation expense for the second

16    quarter of 2006 was $341 million, a 17 percent increase compared to

17    $291 million for the same period of 2005.

18
19    • International segment operating income before depreciation,

20    amortization and stock-based compensation expense for the second

21    quarter of 2006 was $116 million, a 51 percent increase compared to $77

22    million for the same period of 2005.

23    Cash Flow Information

24
25    Free cash flow was $358 million in the second quarter of 2006

26    compared to $300 million for the same period of 2005. In addition to free

27    cash flow, Yahoo! generated $102 million from the issuance of common

28    stock as a result of the exercise of employee stock options. These sources

- 23 -

of cash were offset by $250 million used for structured stock repurchase transactions, $51 million used for direct stock repurchases and $61 used for acquisitions. Cash, cash equivalents and investments in marketable debt securities were $3,965 million at June 30, 2006 as compared to $3,833 million at March 31, 2006, an increase of $132 million.

Please refer to the "Note to Unaudited Condensed Consolidated Statements of Operations" for definitions of certain key financial measures used here and in the "Business Outlook" attached to this press release.

***

20.    The shocking news of the evaporation of Yahoo!'s sales reversed the reasons and rationale for the inflated market value of the Company's stock. Finally, it had become clear to the investment community that Google's market share internet searches had dramatically increased, while Yahoo!'s market share had retreated, demonstrative of the significant adverse impacts experienced in the delivery of its B2B services during the Class Period. As a result of this shocking news, the price of shares of Yahoo! stock plunged $7.04 per share, for a loss of over 21% percent, to close on July 18, 2006 at $25.20 per share, on extremely high volume of over 204.3 million shares.

21.    The over 21% decline in the price of Yahoo! stock on July 18, 2006 was the direct result of the unraveling of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Yahoo!'s stock price decline negates any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.

22.    While the over 21% decline in Yahoo!'s stock price occurred as

- 24 -

1  Defendants' fraud was being revealed, the Standard & Poor's 500 securities index was
2  flat. The economic loss, *i.e.*, the billions of dollars in lost market capitalization
3  sustained as damages by plaintiff and other members of the Class were a direct result
4  of Defendants' fraudulent scheme to artificially inflate Yahoo!'s stock price and the
5  subsequent significant decline in the value of Yahoo!'s stock when Defendants' prior
6  misrepresentations and other fraudulent conduct were revealed.

7  ## APPLICABILITY OF PRESUMPTION OF RELIANCE
8  ## FRAUD-ON-THE-MARKET DOCTRINE

9      23.   At all relevant times, the market for Yahoo! was an efficient market, for
10  the following reasons, among others:

11          (a)   Yahoo! met the requirements for listing, and was listed and
12  actively traded on the NASDAQ, a highly efficient and automated market;

13          (b)   As a regulated issuer, defendants filed periodic public reports with
14  the SEC; and

15          (c)   Defendants regularly communicated with public investors via
16
17  established market communication mechanisms, including through regular
18  disseminations of press releases on the national circuits of major newswire services
19  and through other wide-ranging public disclosures, such as communications with the
20  financial press and other similar reporting services.

21      24.   As a result of the foregoing, the market for the securities of Yahoo!
22  promptly digested current information regarding Yahoo! from all publicly available
23  sources and reflected such information in stock prices of Yahoo!. Under these
24  circumstances, all persons who purchased or acquired the securities of Yahoo! during
25  the Class Period suffered similar injury through their purchase of the aforementioned
26  securities at artificially inflated prices and a presumption of reliance applies.

27
28

1

## NO SAFE HARBOR

2      25.    The statutory safe harbor provided for forward-looking statements under
3   certain circumstances does not apply to any of the allegedly false statements pleaded
4   in this complaint. Many of the specific statements pleaded herein were not identified
5   as "forward-looking statements" when made.  To the extent there were any forward-
6   looking statements, there were no meaningful cautionary statements identifying
7   important factors that could cause actual results to differ materially from those in the
8   purportedly forward-looking statements.  Alternatively, to the extent that the statutory
9   safe harbor does apply to any forward-looking statements pleaded herein, defendants
10   are liable for those false forward-looking statements because at the time each of those
11   forward-looking statements was made, the particular speaker knew that the particular
12   forward-looking statement was false, and/or the forward-looking statement was
13   authorized and/or approved by executive officer(s) of defendants who knew that those
14   statements were false when made.

15

## CLASS ACTION ALLEGATIONS

16      26.    Plaintiff brings this action as a class action pursuant to Rule 23 of the
17   Federal Rules of Civil Procedure on behalf of all persons who purchased Yahoo!
18   publicly traded securities on the open market during the Class Period (the "Class").
19   Excluded from the Class are defendants.

20      27.    The members of the Class are so numerous that joinder of all members is
21   impracticable.  The disposition of their claims in a class action will provide substantial
22   benefits to the parties and the Court.  Yahoo! had more than 1.36 billion shares of
23   stock outstanding, owned by hundreds if not thousands of persons.

24      28.    There is a well-defined community of interest in the questions of law and
25   fact involved in this case.  Questions of law and fact common to the members of the
26   Class which predominate over questions which may affect individual Class members
27   include:

28           (a)    Whether the Exchange Act was violated by defendants;

- 26 -

1    (b)  Whether defendants omitted and/or misrepresented material facts;

2    (c)  Whether Defendants' statements omitted material facts necessary

3 to make the statements made, in light of the circumstances under which they were

4 made, not misleading;

5

6    (d)  Whether defendants knew or deliberately disregarded that their

7 statements were false and misleading;

8    (e)  Whether the prices of Yahoo!'s publicly traded securities were

9 artificially inflated; and

10    (f)  The extent of damage sustained by Class members and the

11 appropriate measure of damages.

12

13  29.  Plaintiff's claims are typical of those of the Class because plaintiff and

14 the Class sustained damages from Defendants' wrongful conduct.

15  30.  Plaintiff will adequately protect the interests of the Class and has retained

16 counsel who are experienced in class action securities litigation. Plaintiff has no

17 interests which conflict with those of the Class.

18  31.  A class action is superior to other available methods for the fair and

19 efficient adjudication of this controversy.

20            **COUNT I**

21     <u>**For Violation of §10(b) of the 1934 Act and Rule 10b-5**</u>
         <u>**Against All Defendants**</u>

22

23  32.  Plaintiff incorporates ¶¶1-31 by reference.

24  33.  During the Class Period, Defendants disseminated, approved or

25 deliberately disregarded the false statements specified above, which they knew or

26 should have known were misleading in that they contained misrepresentations and

27 failed to disclose material facts necessary in order to make the statements, in light of

28 the circumstances under which they were made, not misleading.

1      34.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

2             (a)    Employed devices, schemes, and artifices to defraud;

3             (b)    Made untrue statements of material facts or omitted to state

4     material facts necessary in order to make the statements, in light of the circumstances

5     under which they were made, not misleading; or

6

7             (c)    Engaged in acts, practices, and a course of business that operated

8     as a fraud or deceit upon plaintiff and others similarly situated in connection with their

9     purchases of publicly traded Yahoo! publicly traded securities during the Class Period.

10     35.    Plaintiff and the Class have suffered damages in that, in reliance on the

11     integrity of the market, they paid artificially inflated prices for Yahoo! publicly traded

12     securities. Plaintiff and the Class would not have purchased Yahoo! publicly traded

13     securities at the prices they paid, or at all, if they had been aware that the market

14     prices had been artificially and falsely inflated by Defendants' misleading statements.

15     36.    As a direct and proximate result of these Defendants' wrongful conduct,

16     plaintiff and the other members of the Class suffered damages in connection with their

17     purchases of Yahoo! publicly traded securities during the Class Period.

18                                    **COUNT II**

19                          **For Violation of §20(a) of the 1934 Act**
20                               **Against All Defendants**

21     37.    Plaintiff incorporates ¶¶1-36 by reference.

22     38.    The Individual Defendants acted as controlling persons of Yahoo! within

23     the meaning of §20(a) of the Exchange Act. By reason of their positions as officers

24     and/or directors of Yahoo! and their ownership of Yahoo! stock, the Individual

25     Defendants had the power and authority to cause Yahoo! to engage in the wrongful

26     conduct complained of herein. Yahoo! controlled each of the Individual Defendants

27     and all of its employees. By reason of such conduct, the Individual Defendants and

28

1  Yahoo! are liable pursuant to §20(a) of the Exchange Act.

2  ## PRAYER FOR RELIEF

3  WHEREFORE, plaintiff prays for judgment as follows:

4      A.    Declaring this action to be a proper class action pursuant to FRCP 23;

5      B.    Awarding plaintiff and the members of the Class damages, interest and

6  costs; and

7      C.    Awarding such equitable/injunctive or other relief as the Court may deem

8  just and proper.

9  ## JURY DEMAND

10  Plaintiff hereby demands a trial by jury on all causes of action so triable.

11

12  DATED:    June 15, 2007

13      Respectfully submitted,

14

15

16      SCOTT + SCOTT, LLP
17      Arthur Shingler, III
    5455 Wilshire Blvd., Suite 1800
18      Los Angeles, CA 90036
    Tel.: 213/985-1274
19      Fax: 213/985-1278
    -and-
20      Nicholas J. Licato
    600 B. Street, Suite 1500
21      San Diego, CA 92101
    Telephone: (619) 233-4565
22      Facsimile: (610) 233-0508

23      SCOTT + SCOTT, LLP
    David R. Scott
24      108 Norwich Avenue
    P. O. Box 192
25      Colchester, CT 06415
    Telephone: (860) 537-5537
26      Facsimile: (860) 537-4432

27      *Counsel for Plaintiff*

28

- 29 -

**PLAINTIFF CERTIFICATION**
**PURSUANT TO FEDERAL SECURITIES LAWS**

Manfred Raul Hackel 8 , ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint and retains Scott + Scott, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel, or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transaction(s) in the YAHOO!, INC. (YHOO) security that is the subject of this action during the Class Period is/are as follows:

| No of Shares | Buy/Sell | Date | Price Per Share (incl commission) |
|---|---|---|---|
| 1000 | $34.51 | 1/19/06 | $34.60 |

5.    During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a class representative in a federal securities fraud case.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _15_th day of
_May_____, 2007, at _Boca Raton - Fl._ (city, state).

Your Printed Name:    Manfred Raul Hacker

Signature:

Mailing Address:

Telephone number:        REDACTED

E-mail address:

NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER

SCOTT + SCOTT LLP
Arthur L Shingler III (181719)
5455 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Tel.: 213/985-1274
Fax: 213/985-1278

ATTORNEYS FOR:    Plaintiff, Manfred Hacker

FILED

2007 JUN 15  PM 2: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| MANFRED HACKER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>YAHOO! INC., TERRY S. SEMEL AND SUSAN L. DECKER,<br><br>Defendant(s) | CASE NUMBER<br><br>CV 07 3902 ODW (JWJx)<br><br>**CERTIFICATION AND NOTICE OF INTERESTED PARTIES**<br>**(Local Rule 7.1-1)** |
|---|---|

TO:    THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for  MANFRED HACKER, Individually and On Behalf of All Others Similarly Situated
(or party appearing in pro per), certifies that the following listed party (or parties) has (have) a direct, pecuniary
interest in the outcome of this case. These representations are made to enable the Court to evaluate possible
disqualification or recusal. (Use additional sheet if necessary.)

**PARTY**                                                                **CONNECTION**

(List the names of all such parties and identify their connection and interest.)

YAHOO! INC.                                                    Defendant

Terry S. Semel                                                  Defendant

Susan L. Decker                                                Defendant

6/15/07
Date                                            Sign

Plantiff

Attorney of record for or party appearing in pro per

DOCKETED ON CM

JUN 2 1 2007

BY _____ 019

NOTICE OF INTERESTED PARTIES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Jeffrey W. Johnson.

The case number on all documents filed with the Court should read as follows:

## CV07- 3902 ODW (JWJx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

MANFRED HACKER, ON BEHALF OF HIMSELF and ALL OTHERS SIMILARLY SITUATED,

PLAINTIFF(S)

v.

YAHOO! INC., TERRY S. SEMEL AND SUSAN L. DECKER

DEFENDANT(S).

CASE NUMBER

*FOR OFFICE USE ONLY*

CV 07 3902 ODW (JWJx)

SUMMONS

TO:     THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney Arthur Shingler_____, whose address is: _____

SCOTT + SCOTT LLP
5455 Wilshire Blvd., Suite 1800
Los Angeles, CA  90036

an answer to the ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive of the day of service. If you fail to do so judgement by default will be taken against you for the relief demanded in the complaint.

*FOR OFFICE USE ONLY*

Clerk, U.S. District Court

Dated: _____ JUN 1 5 2007

By: _____ NORA CULLEN

Deputy Clerk

(Seal of the Court)

SEAL

DOCKETED ON CM

JUN 2 1 2007

BY _____ 010



1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   MANFRED HACKER, et al.,            )   Case No. CV 07-3902-ODW(JWJx)
                                        )
12                                      )
                                        )   STANDING ORDER
13                      Plaintiff(s),   )   REGARDING NEWLY
                                        )   ASSIGNED CASES
14            v.                        )
                                        )
15   YAHOO!, INC., et al.,              )
                                        )
16                                      )
                        Defendant(s).   )
17   _____)

18

19       **READ THIS ORDER CAREFULLY.  IT CONTROLS THIS CASE AND**
20          **DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

21

22       This case has been assigned to the calendar of United States District

23   Judge Otis D. Wright II.  The responsibility for the progress of litigation in the

24   Federal Courts falls not only upon the attorneys in the action, but upon the Court

25   as well.  "To secure the just, speedy, and inexpensive determination of every

26   action," Fed. R. Civ. P.1, all counsel are hereby ordered to familiarize themselves

27   with the Fed. R. Civ. P. , particularly Fed. R. Civ. P. 16, 26, the Local Rules of the

28

1 | Central District of California, this Court's Order for Jury Trial, and this Court's

2 | Order for Court Trial.[1]

3

4 | **UNLESS OTHERWISE ORDERED BY THE COURT, THE FOLLOWING**

5 | **RULES SHALL APPLY:**

6 |    **1.    Service of the Complaint**. The Plaintiff(s) shall promptly serve the

7 | Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service

8 | pursuant to Local Rule. Any Defendant(s) not timely served shall be dismissed

9 | from the action without prejudice. Any "DOE" or fictitiously-named Defendant(s)

10 | who is not identified and served within 120 days after the case is filed shall be

11 | dismissed pursuant to Fed. R. Civ. P. 4(m).

12 |    **2.    Removed Actions**. Any answers filed in state court must be refiled

13 | in this Court as a supplement to the petition. Any pending motions must be re-

14 | noticed in accordance with Local Rule. If an action is removed to this Court that

15 | contains a form pleading, i.e., a pleading in which boxes are checked, the party or

16 | parties utilizing the form pleading must file an appropriate pleading with this

17 | Court within thirty (30) days of receipt of the Notice of Removal. The appropriate

18 | pleading referred to must comply with the requirements of Fed. R. Civ. P. 7, 7.1, 8,

19 | 9, 10 and 11.

20 |    **3.    Presence of Lead Counsel.** The attorney attending any proceeding

21 | before this Court, including all status and settlement conferences, must be the lead

22 | trial counsel.

23 |    **4.    Discovery.** All discovery matters have been referred to a United

24 | States Magistrate Judge. (The Magistrate Judge's initials follow the Judge's

25

26 |    [1] Copies of the Local Rules are available on the Central District's website at

27 | "http://www.cacd.uscourts.gov."

28 |                                2

1 │ initials next to the case number.) All documents must include the words

2 │ "DISCOVERY MATTER" in the caption to ensure proper routing. Counsel are

3 │ directed to contact the Magistrate Judge's Courtroom Deputy Clerk to schedule

4 │ matters for hearing. Please do not deliver courtesy copies of these papers to this

5 │ Court.

6 │     The decision of the Magistrate Judge shall be final, subject to modification

7 │ by the District court only where it has been shown that the Magistrate Judge's

8 │ order is clearly erroneous or contrary to law. Any party may file and serve a

9 │ motion for review and reconsideration before this Court. The moving party must

10 │ file and serve the motion within ten (10) days of service of a written ruling or

11 │ within ten (10) days of an oral ruling that the Magistrate Judge states will not be

12 │ followed by a written ruling. The motion must specify which portions of the text

13 │ are clearly erroneous or contrary to law, and the claim must be supported by points

14 │ and authorities. Counsel shall deliver a conformed copy of the moving papers and

15 │ responses to the Magistrate Judge's clerk at the time of filing.

16 │     **5.**    **Motions - General Requirements**

17 │     a.   Time for Filing and Hearing Motions: Motions shall be filed in

18 │ accordance with Local Rule 7. This Court hears motions on Mondays, beginning

19 │ at 1:30 p.m. If Monday is a national holiday, motions will be heard on the next

20 │ Monday. If the motion date selected is not available, the Court will issue a minute

21 │ order continuing the date. Opposition or reply papers due on a holiday must be

22 │ filed the preceding Friday - not the following Tuesday, and must be hand-

23 │ delivered or faxed to opposing counsel on that Friday. Professional courtesy

24 │ dictates that moving parties should, whenever possible, avoid filing motions for

25 │ which opposition papers will be due the Friday preceding a holiday. Such a filing

26 │ is likely to cause a requested continuance to be granted.

27 │

28 │                                                                                 3

1    Adherence to the timing requirements is mandatory for Chambers'
2  preparation of motion matters.

3    b. Pre-filing Requirement: Counsel must comply with Local Rule 7-3,
4  which requires counsel to engage in a pre-filing conference "to discuss
5  thoroughly . . . the substance of the contemplated motion and any potential
6  resolution." Counsel should discuss the issues to a sufficient degree that if a
7  motion is still necessary, the briefing may be directed to those substantive issues
8  requiring resolution by the Court. Counsel should resolve minor procedural or
9  other non-substantive matters during the conference. The *pro per* status of one or
10  more parties does not negate this requirement.

11    c. Length and Format of Motion Papers: Memoranda of points and
12  authorities in support of or in opposition to motions shall not exceed 25 pages.
13  Replies shall not exceed 12 pages. Only in rare instances and for good cause
14  shown will the Court grant an application to extend these page limitations.
15  If documentary evidence in support of or in opposition to a motion exceeds 50
16  pages, the evidence must be in a separately bound and tabbed pleading and include
17  a table of contents. If such evidence exceeds 200 pages, the Court's courtesy copy
18  of such evidence shall be placed in a Slant D-Ring binder, including table of
19  contents, with each item of evidence separated by a tab divider on the right side.

20    NOTE: Times New Roman font must be used; the font size must be no less
21  than 14. Footnotes shall be in typeface no less than two sizes smaller than text
22  size and shall be used sparingly. All other typeface regulations are governed by
23  Local Rule 11-3.1.1.

24    Filings that do not conform to the Local Rules and this Order will not be
25  considered.

26    d. Citations to Case Law: Citations to case law must identify not only the

27

28                                        4

1 | case cited, but the specific page referenced.

2 |     e. <u>Citations to Other Sources</u>: Statutory references should identify with

3 | specificity the sections and subsections referenced (*e.g.*, Jurisdiction over this

4 | cause of action may appropriately be found in 47 U.S.C. § 33, which grants the

5 | district courts jurisdiction over all offenses of the Submarine Cable Act, whether

6 | the infraction occurred within the territorial waters of the United States or on

7 | board a vessel of the United States outside said waters). Statutory references that

8 | do not specifically indicate the appropriate section and subsection (*e.g.*, Plaintiffs

9 | allege conduct in violation of the Federal Electronic Communication Privacy Act,

10 | 18 U.S.C. § 2511, et seq.) are to be avoided. Citations to treatises, manuals, and

11 | other materials should include the volume, section, and pages being referenced.

12 |     f. <u>Oral Argument</u>: If the Court deems a matter appropriate for decision

13 | without oral argument, the Court will notify the parties in advance.

14 |     **6.**    <u>**Specific Motion Requirements**</u>

15 |     a. <u>Motions Pursuant to Rule 12</u>: Many motions to dismiss or to strike can

16 | be avoided if the parties confer in good faith (as required under Local Rule 7-3),

17 | especially for perceived defects in a complaint, answer, or counterclaim that could

18 | be corrected by amendment. *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.

19 | 1996) (where a motion to dismiss is granted, a district court should provide leave

20 | to amend unless it is clear that the complaint could not be saved by any

21 | amendment). Moreover, a party has the right to amend the complaint "once as a

22 | matter of course at any time before a responsive pleading is served." Fed. R. Civ.

23 | P. 15(a). A Rule 12(b)(6) motion is not a responsive pleading and therefore

24 | plaintiff might have a right to amend. *See St. Michael's Convalescent Hospital v.*

25 | *California*, 643 F.2d 1369, 1374 (9th Cir. 1981); *Nolen v. Fitzharris*, 450 F.2d

26 | 958, 958-59 (9th Cir. 1971). Even after a complaint has been amended or a

27 |

28 |         5

1   responsive pleading has been served, the Federal Rules provide that leave to

2   amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a).

3   The Ninth Circuit requires that this policy favoring amendment be applied with

4   "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

5   1079 (9th Cir. 1990).

6       These principles require that plaintiff's counsel carefully evaluate

7   defendant's contentions as to the deficiencies in the complaint. In most instances

8   the moving party should agree to any amendment that would cure the defect.

9       b.  Motions to Amend: In addition to the requirements of Local Rule 15-1,

10  all motions to amend pleadings shall: (1) state the effect of the amendment; (2) be

11  serially numbered to differentiate the amendment from previous amendments; and

12  (3) state the page and line number(s) and wording of any proposed change or

13  addition of material.

14      The parties shall deliver to Chambers a "redlined" version of the proposed

15  amended pleading indicating all additions and deletions of material.

16      c.  Summary Judgment Motions: Parties need not wait until the motion

17  cutoff to bring motions for summary judgment or partial summary judgment.

18  However, the court expects that the party moving for summary judgment will

19  provide more than the minimum twenty-one (21) day notice for motions. Because

20  summary judgment motions are fact-dependent, parties should prepare papers in a

21  fashion that will assist the court in absorbing the mass of facts (*e.g.*, generous use

22  of tabs, tables of contents, headings, indices, etc.). The parties are to comply

23  precisely with Local Rule 56-1 through 56-4.

24          i.  Statement of Undisputed Facts and Statement of Genuine Issues:

25      The separate statement of undisputed facts shall be prepared in a two-

26  column format. The left hand column sets forth the allegedly undisputed fact.

27

28                                          6

1  The right hand column sets forth the evidence that supports the factual statement.

2  The factual statements should be set forth in sequentially numbered paragraphs.

3  Each paragraph should contain a narrowly focused statement of fact. Each

4  numbered paragraph should address a single subject as concisely as possible.

5  The opposing party's statement of genuine issues must be in two columns

6  and track the movant's separate statement exactly as prepared. The left hand

7  column must restate the allegedly undisputed fact, and the right hand column must

8  state either that it is undisputed or disputed. The opposing party may dispute all or

9  only a portion of the statement, but if disputing only a portion, it must clearly

10  indicate what part is being disputed, followed by the opposing party's evidence

11  controverting the fact. The court will not wade through a document to determine

12  whether a fact really is in dispute. To demonstrate that a fact is disputed, the

13  opposing party must briefly state why it disputes the moving party's asserted fact,

14  cite to the relevant exhibit or other piece of evidence, and describe what it is in

15  that exhibit or evidence that refutes the asserted fact. No legal argument should be

16  set forth in this document.

17  The opposing party may submit additional material facts that bear on or

18  relate to the issues raised by the movant, which shall follow the format described

19  above for the moving party's separate statement. These additional facts shall

20  continue in sequentially numbered paragraphs and shall set forth in the right hand

21  column the evidence that supports that statement.

22  ii. Supporting Evidence: No party shall submit evidence other than

23  the specific items of evidence or testimony necessary to support or controvert a

24  proposed statement of undisputed fact. For example, entire deposition transcripts,

25  entire sets of interrogatory responses, and documents that do not specifically

26  support or controvert material in the separate statement shall not be submitted in

27

28  7

1  support of opposition to a motion for summary judgment. The court will not
2  consider such material.

3         Evidence submitted in support of or in opposition to a motion should be
4  submitted either by way of stipulation or as exhibits to declarations sufficient to
5  authenticate the proffered evidence, and should not be attached to the
6  memorandum of points and authorities. The court will accept counsel's
7  authentication of deposition transcripts, written discovery responses and the
8  receipt of documents in discovery if the fact that the document was in the
9  opponent's possession is of independent significance. Documentary evidence as
10 to which there is no stipulation regarding foundation must be accompanied by the
11 testimony, either by declaration or properly authenticated deposition transcript, of
12 a witness who can establish authenticity.

13         iii. <u>Objections to Evidence</u>: If a party disputes a fact based in
14 whole or in part on an evidentiary objection, the ground of the objection, as
15 indicated above, should be stated in a separate statement but not argued in that
16 document.

17    **7.    Proposed Orders**. Each party filing or opposing a motion or seeking
18 the determination of any matter shall serve and lodge a proposed order setting
19 forth the relief or action sought and a brief statement of the rationale for the
20 decision with appropriate citations.

21    **8.    Courtesy Copies**: A conformed courtesy copy of an opposition,
22 reply, ex parte document, or notice of settlement/dismissal shall be placed in the
23 drop-box outside chambers. <u>All original filings are to be filed at the filing window</u>
24 <u>(Clerk's Office, Room G-19), NOT in chambers and NOT in the courtroom.</u>

25    **9.    Telephonic Hearings.** The Court does not permit appearances or
26 arguments by way of telephone conference calls.

27

28                                    8

1    **10.    Ex Parte Applications**. The Court considers ex parte applications
2  on the papers and does not usually set these matters for hearing. If a hearing is
3  necessary, the parties will be notified. Ex parte applications are solely for
4  extraordinary relief and should be used with discretion. Sanctions may be
5  imposed for misuse of ex parte applications. *See Mission Power Engineering Co.*
6  *v. Continental Casualty Co.,* 883 F.Supp. 488 (C.D. Cal. 1995).

7    Counsel's attention is directed to Local Rules. Applications that fail to
8  conform to Local Rule 7-19 and 7-19.1, **including a statement of opposing**
9  **counsel's position**, will not be considered except on a specific showing of good
10  cause. In addition to the requirements of Local Rules 7-19 and 7-19.1, the moving
11  party shall, following service of the ex parte papers by facsimile transmission or
12  personal service, notify the opposition that opposing papers must be filed no later
13  than twenty four (24) hours following service, except in cases where the opposing
14  party has not previously appeared (i.e. responded to the Complaint). In those
15  cases where the opposing party has not previously appeared, the moving party
16  shall, following service of the ex parte papers by facsimile or personal service,
17  notify the opposition that opposing papers must be filed no later than forty eight
18  (48) hours following service. A conformed courtesy copy of moving, opposition,
19  or notice of non-opposition papers are to be hand-delivered to the courtesy box
20  outside the entrance to Judge Wright's chambers on the Spring Street level of the
21  U.S. Courthouse, 312 North Spring Street. Counsel will be notified by the clerk of
22  the Court's ruling. If counsel does not intend to oppose an ex parte application, he
23  or she must inform the Courtroom Deputy Clerk at (213) 894-8266.

24    **11.    TROs and Injunctions**. Parties seeking emergency or provisional
25  relief shall comply with Rule 65 and Local Rule 65. The Court will not rule on
26  any application for such relief for at least twenty-four hours after the party subject

27

28                                                9

1 | to the requested order has been served, unless service is excused. Such party may
2 | file opposing or responding papers in the interim.

3 | **12.** **Continuances**. This Court has a strong interest in keeping scheduled
4 | dates certain. Changes in dates are disfavored. Trial dates set by the Court are
5 | firm and will rarely be changed. Therefore, a stipulation to continue the date of
6 | any matter before this Court **must** be supported by a sufficient basis that
7 | demonstrates good cause why the change in the date is essential. Without such
8 | compelling factual support, stipulations continuing dates set by this Court will not
9 | be approved. Counsel requesting a continuance must lodge a proposed stipulation
10 | and order including a **detailed** declaration of the grounds for the requested
11 | continuance or extension of time. Failure to comply with the Local Rules and this
12 | Order will result in rejection of the request without further notice to the parties.
13 | Proposed stipulations extending scheduling dates do not become effective unless
14 | and until this Court so orders. Counsel wishing to know whether a stipulation has
15 | been signed shall comply with the applicable Local Rule.

16 | **13.** **Communications with Chambers**. Counsel shall not attempt to
17 | contact the Court or its staff by telephone or by any other ex parte means. Counsel
18 | may contact the Courtroom Deputy Clerk with appropriate inquiries only.
19 | Counsel shall not contact the Courtroom Deputy regarding status of ex parte
20 | application/ruling or stipulation/ruling. If counsel desires a conformed copy of
21 | any proposed order submitted to the Court, counsel shall provide an extra copy of
22 | the document, along with a self-addressed, stamped envelope. Counsel should list
23 | their facsimile transmission numbers along with their telephone numbers on all
24 | papers to facilitate communication with the Courtroom Deputy.

25 | **14.** **Order Setting Scheduling Conference**. Pursuant to
26 | Fed. R. Civ. P.16(b), the Court will issue an Order setting a Scheduling
27 |
28 | 10

1 | Conference as required by Fed. R. Civ. P. 26 and the Local Rules of this Court.

2 | Strict compliance with Fed. R. Civ. P. 16 and 26 is required.

3 |     **15.**    **Notice of this Order**.   Counsel for plaintiff or plaintiff (if appearing

4 | on his or her own behalf) shall immediately serve this Order on all parties,

5 | including any new parties to the action. If this case came to the Court by a

6 | Petition for Removal, the removing defendant(s) shall serve this Order on all other

7 | parties.

8

   DATED:     June 19, 2007

9

10

11 |                         Otis D. Wright II
                        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 | Rev. 4/07                11

1  SCOTT + SCOTT LLP
   Arthur L. Shingler III (181719)
2  5455 Wilshire Blvd., Suite 1800
   Los Angeles, CA  90036
3  Tel.: 213/985-1274
   Fax: 213/985-1278
4       -and-
   Nicholas J. Licato (228402)
5  600 B Street, Suite 1500
   San Diego, CA  92101
6  Tel.: 619/233-4565
   Fax: 619/233-0508
7  Email: ashingler@scott-scott.com

8
   SCOTT + SCOTT LLP
9  David R. Scott
   108 Norwich Avenue
10 P. O Box 192
   Colchester, CT  06415
11 Tel:  860/537-5537
   Fax: 860/537-4432
12 Email: drscott@scott-scott.com

13
   Attorneys for Plaintiff
14
                   UNITED STATES DISTRICT COURT
15
                 CENTRAL DISTRICT OF CALIFORNIA
16
                      WESTERN DIVISION
17
   MANFRED HACKER, on Behalf of      )
18 Himself and All Others Similarly  )
   Situated,                         )   Case No. CV-07-3902-ODW(JWJx)
19                                    )
                    Plaintiff,        )   CLASS ACTION
20                                    )
          vs.                         )   NOTICE OF RELATED CASES
21                                    )
   YAHOO! INC., TERRY S. SEMEL,       )
22 AND SUSAN L. DECKER,               )
                                      )
23                                    )
                                      )
24              Defendants.           )
                                      )
25 ─────────────────────────────────

26

27

28

1  TO:    THE COURT AND ALL PARTIES OF RECORD

2

3      PLEASE TAKE NOTICE that the following additional actions are pending

4  before this Court which, pursuant to Rule 83-1.3 of the Local Rules for the United

5  States District Court for the Central District of California, are related to this action:

6

| Case Name | Civ. No. | Filing Date | Judge |
|---|---|---|---|
| *Checkmate Strategic Group Inc. v. Yahoo! Inc., et al.* | CV-05-04588-CAS(FMO) | 6/23/05 | Snyder |
| *Brodsky v. Yahoo! Inc., et al.* | CV-07-03125-CAS(FMOx) | 5/11/07 | Snyder |
| *Hacker v. Yahoo! Inc., et al.* | CV-07-3902-ODW(JWJx) | 6/15/07 | Wright |

12

13      Local Rule 83-1.3 of the United States District Court for the Central District of

14  California provides that a Notice of Related Case shall be filed and served on all

15  parties who have appeared stating whether any action pending in the Central District

16  of California and the action being filed appear: (a) to arise from the same or

17  substantially identical transactions, happenings or events; or (b) to call for

18  determination of the same or substantially identical questions of law and fact; or (c)

19  likely for other reasons to entail substantial duplication of labor if heard by different

20  judges.

21      The above case involves substantially identical factual allegations, causes of

22  action and defendants as does this action.

23      Because this action arises from the same transactions, happenings or events,

24  calls for determination of the same questions of law and/or fact and is likely to entail

25  substantial duplication of labor if heard by a different judge it is related within the

26  meaning of Local Rule 83-1.3.

27      WHEREFORE, plaintiff requests:

28      1.    That this action, *Hacker v. Yahoo! Inc., et al.*, be assigned to the

- 1 -

1  Honorable Christina A. Snyder, the Judge assigned to the low-numbered action,

2  *Checkmate Strategic Group Inc. v. Yahoo! Inc., et al.*, No CV-05-04588-CAS(FMO);

3  and

4      2.      That all subsequent related actions be assigned to the Honorable

5  Christina A. Snyder.

6

7  DATED:    June 26, 2007

8                                              Respectfully submitted,

9

10

11                                              SCOTT + SCOTT, LLP
                                                Arthur Shingler, III
12                                              5455 Wilshire Blvd., Suite 1800
                                                Los Angeles, CA 90036
13                                              Tel.: 213/985-1274
                                                Fax: 213/985-1278
14                                                  -and-
                                                Nicholas J. Licato
15                                              600 B. Street, Suite 1500
                                                San Diego, CA 92101
16                                              Telephone: (619) 233-4565
                                                Facsimile: (610) 233-0508
17

18                                              SCOTT + SCOTT, LLP
                                                David R. Scott
19                                              108 Norwich Avenue
                                                P. O. Box 192
20                                              Colchester, CT 06415
                                                Telephone: (860) 537-5537
21                                              Facsimile: (860) 537-4432

22                                              *Counsel for Plaintiff*

23

24

25

26

27

28

- 2 -

1    **<u>DECLARATION OF SERVICE BY REGULAR MAIL</u>**

2

3        I, the undersigned, declare:

4        That declarant is and was, at all times herein mentioned, a citizen of the United

5    States and employed in the City and County of San Diego, over the age of 18 years,

6    and not a party to or interest in the within action; that declarant's business address is

7    600 B Street, Suite 1500, San Diego California 92101.

8        That on June 26, 2007, declarant served:

9        **1.    Notice of Related Cases**

10    by depositing a true copy thereof in an mail location at San Diego, California in a

11    sealed envelope with postage thereon fully prepaid and addressed to the parties listed

12    on the attached Service List.

13        That there is a regular communication by mail between the mailing location and

14    the places so addressed.

15        I declare under penalty of perjury that the foregoing is true and correct.

16    Executed this 26th day of June, 2007, at San Diego, California.

17

18                                      _____
                                       LAURA AREHART

19

20

21

22

23

24

25

26

27

28

- 3 -

SERVICE LIST

David R. Scott
SCOTT + SCOTT, LLP
David R. Scott
108 Norwich Avenue
P. O. Box 192
Colchester, CT  06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
drscott@scott-scott.com

Arthur Shingler, III
SCOTT + SCOTT, LLP
5455 Wilshire Blvd., Suite 1800
Los Angeles, CA  90036
Tel.: 213/985-1274
Fax: 213/985-1278
ashingler@scott-scott.com

Nicholas J. Licato
SCOTT + SCOTT LLP
600 B. Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (610) 233-0508
nlicato@scott-scott.com

Darren J Robbins
LERACH COUGHLIN STOIA
GELLER RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone  (619) 231-1058
Facsimile  (619) 231-7423
denisey@lerachlaw.com

Judson E Lobdell
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105-2482
Phone: (415) 268-7000
Fax: (415) 268-7522
jlobdell@mofo.com

Mark R. S. Foster
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105-2482
Phone: (415) 268-7000
Fax: (415) 268-7522
mfoster@mofo.com

- 4 -

**ORIGINAL** (4)

FILED
CLERK, U.S. DISTRICT COURT

I 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Manfred Hacker, et al | CASE NUMBER: |
|---|---|
| Plaintiff(s), | CV 07-3902 ODW (JWJx) |
| v. | |
| Yahoo!, Inc., et al | **ORDER RE TRANSFER PURSUANT** |
| | **TO GENERAL ORDER 07-02** |
| Defendant(s). | **( Related Cases )** |

## CONSENT

I hereby consent to the transfer of the above-entitled case to my calendar, pursuant to General Order 07-02.

_7/9/07_
Date

_Christina A. Snyder_
United States District Judge

## DECLINATION

I hereby decline to transfer the above-entitled case to my calendar for the reasons set forth:

_____
Date

_____
United States District Judge

## REASON FOR TRANSFER AS INDICATED BY COUNSEL

Case _____CV 05-4588 CAS (FMOx)_____ and the present case:

☑ A.  Arise from the same or closely related transactions, happenings or events; or
☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

## NOTICE TO COUNSEL FROM CLERK

Pursuant to the above transfer, any discovery matters that are or may be referred to a Magistrate Judge are hereby transferred from Magistrate Judge _____Johnson_____ to Magistrate Judge _____Olguin_____.

On all documents subsequently filed in this case, please substitute the initials ___CAS (FMOx)___ after the case number in place of the initials of the prior judge, so that the case number will read ___CV 07-3902 CAS (FMOx)___. This is very important because documents are routed to the assigned judges by means of these initials. The case file, under seal documents, exhibits, docket, transcripts or depositions may be viewed at the ☑ Western  ☐ Southern  ☐ Eastern Division.

**Subsequent documents must be filed at the  ☑ Western  ☐ Southern  ☐ Eastern Division.**
**Failure to file at the proper location will result in your documents being returned to you.**

(5)

JUL - 3 2007

ENTERED ___ 7/10/07 A



David R. Scott, Esq.
Scott + Scott, LLP
108 Norwich Avenue, P.O. Box 192
Colchester, CT 06415
P: (860) 537-5537

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANFRED HACKER, on behalf of himself and all others similarly situated     Plaintiff(s) <br><br> v. <br><br> YAHOO! INC., TERRY S. SEMEL and SUSAN L. DECKER     Defendant(s). | CASE NUMBER <br><br> CV-07-03902-ODW (JWJx) <br><br><br> APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE |

NOTICE:  Effective June 1, 2004, the fee for *Pro Hac Vice* Appearance is $185.00 for **each case** application. Please submit the fee with your application. Pursuant to Local Rule 83-2.4, submission of this application and the fee is waived for attorneys for the United States, its departments and agencies with Appointment Affidavits on file with the Clerk. If no Appointment Affidavit is on file, submission of the application is required.
*To receive orders and judgements by e-mail, complete and return the Optical Scanning Enrollment form (G-76), available on the court's website at www.cacd.uscourts.gov.*

I, _____David R. Scott_____ , hereby apply to the Court under Local Rule 83-2.8.2 for permission to appear and participate in the above-entitled action on behalf of ☑ Plaintiff     ☐ Defendant: _____Manfred Hacker_____ by whom I have been retained.

My *out-of-state* business information is as follows:

Scott + Scott, LLP
*Firm Name*
108 Norwich Avenue, P.O. Box 192
*Street Address*

| | |
|---|---|
| Colchester, CT 06415 | drscott@scott-scott.com |
| *City, State, Zip* | *E-Mail Address* |
| (860) 537-5537 | (860) 537-4432 |
| *Telephone Number* | *Fax Number* |

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date of Admission |
|---|---|
| See attached "Exhibit A" | |
| | |
| | |
| | |

DOCKETED ON CM
JUL 1 9 2007
BY _____ 002

I am not a resident of, nor am I regularly employed, engaged in business, professional or other activities in the State of California. I am not currently suspended or disbarred in any court.

JUL 1 3 2007

I have concurrently, or within three (3) years of this application, made *Pro Hac Vice* applications to this Court in the following actions:

| Case Number | Title of Action | Date of Application | Application Granted or Denied |
|---|---|---|---|
| 06-cv-00031 | Earl Schriver v. Impac, et al. | 6/09/06 | GR-06/09/06 |
| 03-cv-02318 | Hammer v. Tenant Healthcare | 7/11/03 | GR - 7/14/03 |
| 06-cv-663 | Yen Shei v. Scott McGregor | 9/25/06 | GR - 9/27/06 |

If any *Pro Hac Vice* applications submitted within three (3) years of this application have been denied by the Court, please explain:

I designate _____ Arthur L. Shingler _____ as local counsel, whose business information is as follows:

Scott + Scott, LLP
*Firm Name*
5455 Wilshire Blvd., Suite 1800
*Street Address*

Los Angeles, CA 90036                          ashingler@scott-scott.com
*City, State, Zip*                                          *E-Mail Address*
(213) 985-1274                          (213) 985-1278
*Telephone Number*                          *Fax Number*

who is a member in good standing of the Bar of this Court and maintains an office in the Central District of California for the practice of law, as the attorney with whom the Court and opposing counsel may readily communicate regarding the conduct of this case, and upon whom papers may be served.

I declare under penalty of perjury that the foregoing is true and correct and that I am familiar with the Local Rules, the Local Criminal Rules, the F.R. Civ. P., the F.R. Crim. P., and the F.R. Evidence.

Dated 6/28/07

David R. Scott
*Applicant's Name (please print)*

*Applicant's Signature*

I hereby consent to the foregoing designation as local counsel.

Dated 7-2-07

Arthur L. Shingler
*Designee's Name (please print)*

*Designee's Signature*

CA 181719
*Designee's California State Bar Number*

**NOTE: COUNSEL AND PARTIES ARE REMINDED TO SUBMIT A COMPLETED *ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE* (G-64 ORDER) ALONG WITH THIS APPLICATION.**

## DAVID R. SCOTT
## EXHIBIT A

I was admitted to practice before the Bar of the following courts, as follows:

1.    State of Connecticut Supreme Court on January 4, 1990 (Bar No. 401117);

2.    United States of America District Court of Connecticut on March 11, 1996 (Bar No. CT16080);

3.    Supreme Court of Pennsylvania Eastern District on February 23, 1990 (S. C. No. 57871);

4.    United States of America Eastern District of Pennsylvania on November 5, 1990 (Bar No. 57871);

5.    Supreme Court of New York on October 22, 1996 (Bar No. 488977);

6.    United States of America Tax Court on December 18, 1995;

7.    United States of America Southern District of Texas on April 19, 2000  (Bar No. 24622);

8.    United States of America District of Colorado on March 1, 2000;

9.    United States of America Court of Appeals for the Fifth Circuit on March 21, 2000;

10.    United States of America Northern District of Texas on January 6, 2003 (Bar No. CT401117); and

11.    United States of America Southern District of New York on April 22, 2003 (Bar No. DS8053).

Dated: 6/28/07

David R. Scott

David R. Scott, Esq.
Scott + Scott, LLP
108 Norwich Ave., P.O. Box 192
Colchester, CT 06415
P: (860) 537-5537

LODGED
CLERK, U.S. DISTRICT COURT

CLERK, U.S. FILED DISTRICT COURT

JUL 1 7 2007

JUL 0 6 2007
m r 5

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CENTRAL DISTRICT OF CALIFORNIA
BY

MANFRED HACKER, on behalf of himself
and all others similarly situated

Plaintiff(s)

v.

YAHOO! INC., TERRY S. SEMEL and
SUSAN L. DECKER

Defendant(s).

CASE NUMBER

CV-07-03902-(ODW (JWJx)

ORDER ON
APPLICATION OF NON-RESIDENT ATTORNEY
TO APPEAR IN A SPECIFIC CASE

The Court, having reviewed the accompanying Application of _____ David R. Scott _____,
                                                                            *Applicant's Name*

of _____ Scott + Scott, LLP _____ for permission to appear and participate in the above-entitled
            *Firm Name*

action on behalf of ☑ Plaintiff    ☐ Defendant _____ Manfred Hacker _____

and the designation of _____ Arthur L. Shingler _____ of _____ Scott + Scott, LLP _____
                                 *Local Counsel Designee*                      *Local Counsel Firm*

as local counsel, hereby **ORDERS** the Application be:

☒ GRANTED

☐ DENIED. Fee, if paid, shall be returned by the Clerk.

JUL 1 6 2007

Dated _____

_____
U. S. District Judge/U.S. Magistrate Judge



SERVICE LIST

1.

2  David R. Scott
   SCOTT + SCOTT, LLP
3  David R. Scott
   108 Norwich Avenue
4  P. O. Box 192
   Colchester, CT  06415
5  Telephone:  (860) 537-5537
   Facsimile:  (860) 537-4432
6  drscott@scott-scott.com

7
   Nicholas J. Licato
8  SCOTT + SCOTT LLP
   600 B. Street, Suite 1500
9  San Diego, CA  92101
   Telephone:  (619) 233-4565
10 Facsimile:  (610) 233-0508
   nlicato@scott-scott.com
11

12 Judson E. Lobdell
   MORRISON & FOERSTER
13 425 Market Street
   San Francisco, California 94105-2482
14 Phone:  (415) 268-7000
   Fax:  (415) 268-7522
15 jlobdell@mofo.com

Arthur Shingler, III
SCOTT + SCOTT, LLP
5455 Wilshire Blvd., Suite 1800
Los Angeles, CA  90036
Tel.: 213/985-1274
Fax: 213/985-1278
ashingler@scott-scott.com

Darren J. Robbins
LERACH COUGHLIN STOIA
GELLER RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone  (619) 231-1058
Facsimile  (619) 231-7423
denisey@lerachlaw.com

Mark R. S. Foster
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105-2482
Phone:  (415) 268-7000
Fax:  (415) 268-7522
mfoster@mofo.com

16
17
18
19
20
21
22
23
24
25
26
27
28

- 2 -